LEE TRAN & LIANG LLP
 Enoch H. Liang (Bar No. 212324)
 enoch.liang@ltlattorneys.com
 Lauren C. Sliger (Bar No. 213880)
 lauren.sliger@ltlattorneys.com
 Timothy S. Fox (Bar No. 280918)
 timothy.fox@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
Los Angeles, California 90017
Tel.: 213-612-8900 / Fax: 213-612-3773

Attorneys for Plaintiffs
Unilin Beheer B.V. and Flooring Industries, Ltd. Sarl

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILIN BEHEER B.V., and FLOORING INDUSTRIES, LTD. SARL, | CASE NO.:  14-CV-02210 BRO (SSX) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| NSL TRADING CORPORATION, a California Corporation; NSL Importer, Inc., a California Corporation; HUI CHEN, an individual; JING NIE, an individual; CHASE WOOD & CABINETS, INC., a California corporation; GRANADA WOOD & CABINETS, INC. a California corporation doing business as GRANADA CABINETRY; GRANADA KITCHEN & FLOOR LLC, a California Limited Liability Company; TAO ZHANG; and DOES 1 to 25, | |
| Defendants. | |

Plaintiffs allege the following:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq.

## THE PARTIES

2.     Plaintiff Unilin Beheer B.V. is a company organized under the laws of the Netherlands with its principal place of business at 1 Beneluxstraat, 5061KD Oisterwijk, The Netherlands.

3.     Plaintiff Flooring Industries, Ltd. Sarl is the exclusive licensee to the patents-at-issue in this matter and has its principal place of business at 10b Rue des Mérovingiens, Zone Industrielle Bourmicht, Bertrange 8070, Luxembourg.

4.     Upon information and belief, Defendant NSL Trading Corp. is a California corporation with its principal place of business at 2240 E. Winston Rd., Anaheim CA, 92806.

5.     Upon information and belief, Defendant NSL Importer, Inc. is a California corporation with its principal place of business at 2308 Felicia Ave., Rowland Heights, CA 91748.

6.     Upon information and belief, Defendant NSL Importer, Inc. was formed on December 18, 2013, and Defendant NSL Trading Corp. was dissolved on April 1, 2014.

7.     Upon information and belief, Defendant NSL Importer, Inc. is a corporate affiliate, continuation, successor entity, principal, co-conspirator, aider and abettor, and/or alter-ego of Defendant NSL Trading Corp, and was at all times acting within the scope of such affiliation, continuation, successor, co-conspirator, aider and abettor, and/or alter-ego relationship; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conducts alleged, with full knowledge of all the facts and circumstances, including without

1

limitation to full knowledge of each and every wrongful act and conduct, and Plaintiffs' damages were caused therefrom.

8.     Plaintiffs are informed and believe and thereon allege that Defendant Hui Chen is an individual who resides in Los Angeles County, California.

9.     Plaintiffs are informed and believe and thereon allege that Defendant Jing Nie is an individual who resides in Los Angeles County, California.

10.     Upon information and belief, Defendant Chase Wood & Cabinets, Inc. is a California corporation with its principal place of business at 2240 E. Winston Rd., Anaheim CA, 92806.

11.     Upon information and belief, Defendant Granada Wood & Cabinets, Inc. is a California corporation doing business as Granada Cabinetry with its principal place of business at 2150 E. Winston Rd., Anaheim CA, 92806.

12.     Upon information and belief, Defendant Granada Kitchen & Floor LLC is a California limited liability company with its principal place of business at 1400 E. Cerritos Avenue, Anaheim CA, 92805.

13.     Plaintiffs are informed and believe and thereon allege that Defendant Tao Zhang is an individual who resides in Los Angeles County, California.

14.     Plaintiffs are informed and believe that Defendants Chen, Nie, and Zhang, in conjunction with DOES 1-25, jointly own, manage, and/or control NSL Trading Corp., Chase Wood & Cabinets, Inc., Granada Wood & Cabinets, Inc. doing business as Granada Cabinetry, and Granada Kitchen & Floor LLC.  Defendants Chen, Nie, Zhang, and DOES 1-25 import, distribute and sell products that infringe Plaintiffs' patents through their alter-egos such as entities NSL Trading Corp., Chase Wood & Cabinets, Inc., Granada Wood & Cabinets, Inc. doing business as Granada Cabinetry, and Granada Kitchen & Floor LLC, and DOES 1-25.  Defendants continue to sell such products through different fictitious entities to mask their respective involvement in the improper importation, distribution and sale of products that infringe Plaintiffs' patents.

15.     Plaintiffs are informed and believe and thereon allege that some of Defendants and DOES 1 through 25, inclusive, are importers, vendors and distributors of products that infringe Plaintiffs' patents as described below.  The true names, whether corporate, individual or otherwise, and capacities of defendants sued herein as DOES 1 through 25 are presently unknown to Plaintiffs at this time, and therefore, Plaintiffs sues said defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of defendants designated as a DOE is responsible in some manner for the events alleged herein and the damages caused thereby.   The named Defendants, and DOES 1-25 may be collectively referred to as "Defendants."

16.     Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto each of Defendants acted in concert with each other, was the agent, affiliate, officer, director, manager, principal, alter-ego, co-conspirator, aider and abettor, and/or employee of the remaining defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conducts alleged, with full knowledge of all the facts and circumstances, including without limitation to full knowledge of each and every wrongful conducts and Plaintiffs' damages caused therefrom.

## **JURISDICTION AND VENUE**

17.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

18.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

19.     Upon information and belief, Defendants regularly conduct business in this judicial district and have committed acts of patent infringement in this judicial

1 | district including, inter alia, importing, selling and offering to sell infringing
2 | products and services in this judicial district.

3 |     20.    Upon information and belief, Defendants have ongoing and systematic
4 | contacts with this judicial district and the United States. In particular, Defendants'
5 | principal places of business are located in this judicial district.

6 |     21.    Venue is proper in this judicial district under 28 U.S.C. §§ 139l(c) and
7 | 1400(b).

8 |
9 | **JOINDER**

10 |     22.    Defendants are properly joined under 35 U.S.C. §299(a)(1) because a
11 | right to relief is asserted against the parties jointly, severally and in the alternative
12 | with respect to the same transactions, occurrences, or series of transactions or
13 | occurrences relating to the using, importing into the United States, offering for sale,
14 | and/or selling the same accused products. Specifically, as alleged in detail below,
15 | Defendants are alleged to infringe Unilin's patents with respect to the same
16 | connectable laminate flooring system.

17 |     23.    Defendants are properly joined under 35 U.S.C. §299(a)(2).  Questions
18 | of fact will arise that are common to all defendants, including for example, whether
19 | Defendants' products have features that meet the features of one or more claims of
20 | Unilin's Patents, and what reasonable royalty will be adequate to compensate the
21 | owner of the Asserted Patents for its infringement.

22 |     24.    Defendants use, sell, offer for sale and/or import products that infringe
23 | on Unilin's patents.

24 |     25.    At least one right to relief is asserted against these parties jointly,
25 | severally, or in the alternative with respect to or arising out of the same transaction,
26 | occurrence, or series of transactions or occurrences relating to the using, importing
27 | into the United States, offering for sale, and/or selling of the same accused product
28 | and/or process.

**FIRST CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. 6,874,292**

26.     The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

27.     On April 5, 2005, U.S. Patent No. 6,874,292 ("the '292 patent"), entitled "Floor Panel With Edge Connectors" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '292 Patent is attached as Exhibit A to this Complaint.

28.     Plaintiffs are the assignee and owner of the right, title and interest in and to the '292 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

29.     In violation of 35 U.S.C. § 271, Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the '292 Patent by importing, using, selling and/or offering for sale in the United States, including in this Judicial District, products capable of providing features claimed in the '292 Patent ("the '292 Accused Products and Services"), without the authority of Plaintiffs.

30.     Plaintiffs provided actual notice to Defendant NSL Trading of its infringement of the '292 Patent in multiple letters, the earliest dated June 2012.

31.     Defendants have had actual knowledge of the '292 Patent and their infringement of that patent since at least the date that the letters were received by Defendants and/or their related entities.

32.     Upon information and belief, Defendants have committed and continue to commit acts of contributory infringement of the '292 patent under 35 U.S.C. § 27l(c) by selling, offering to sell, and/or importing products including the '292 Accused Products and Services for the '292 Patent, knowingly or willfully blind to the fact that these products and service constitute a material part of the invention, were especially made or especially adapted for use in an infringement of the '292 Patent, and have no substantial non-infringing uses.

5

33.    Upon information and belief, since at least the date they received the notice letter from Plaintiffs, notifying Defendants that their products infringed the '292 Patent, Defendants have induced and continue to induce others to infringe the '292 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent, actively and knowingly aiding and abetting others to infringe, including, but not limited to, Defendants' customers whose use of the '292 Accused Services and Products constitutes direct infringement of the '292 Patent.  In particular, Defendants acted with specific intent to make others, such as its customers, infringe by advertising and selling the products and by providing written instructions instructing customers on how to assemble and use the products.  On information and belief, Defendants engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendants have had actual knowledge of the '292 Patent and that its acts were inducing its customers to infringe the '292 Patent.

34.    Plaintiffs have been harmed by Defendants' infringing activities.

35.    Plaintiffs provided notice of infringement of the '292 Patent to Defendants, but Defendants thereafter continued to infringe the patent.  On information and belief, Defendants' infringement has been and continues to be willful.

## SECOND CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,928,779

36.    The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

37.    On August 16, 2005, U.S. Patent No. 6,928,779 ("the '779 patent"), entitled "Floor Panel With Edge Connectors" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '779 Patent is attached as Exhibit B to this Complaint.

38.     Plaintiffs are the assignee and owner of the right, title and interest in and to the '779 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

39.     In violation of 35 U.S.C. § 271, Defendants have directly infringed and continue to directly infringe, literally and /or under the doctrine of equivalents, the '779 Patent by importing, using, selling and/or offering for sale in the United States, including in this Judicial District, products capable of providing features claimed in the '779 Patent ("the '779 Accused Products and Services"), without the authority of Plaintiffs.

40.     Plaintiffs provided actual notice to Defendant NSL Trading Corp. of its infringement of the '779 Patent in multiple letters, the earliest dated June 2012.

41.     Defendants have had actual knowledge of the '779 Patent and their infringement of that patent since at least the date that the letters were received by Defendants and/or their related entities.

42.     Upon information and belief, Defendants have committed and continue to commit acts of contributory infringement of the '779 patent under 35 U.S.C. § 271(c) by selling, offering to sell, and/or importing products including the '779 Accused Products and Services for the '779 Patent, knowing or willfully blind to the fact that these products and service constitute a material part of the invention, were especially made or especially adapted for use in an infringement of the '779 Patent, and have no substantial non-infringing uses.

43.     Upon information and belief, since at least the date they received the notice letter from Plaintiffs, notifying Defendants that their products infringed the '779 Patent, Defendants have induced and continue to induce others to infringe the '779 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent, actively and knowingly aiding and abetting others to infringe, including, but not limited to, Defendants' customers whose use of the '779 Accused Services and Products constitutes direct infringement of the '779 Patent.  In particular, Defendants acted with specific intent to make others, such as its customers, infringe by

7

advertising and selling the products and by providing written instructions instructing customers on how to assemble and use the products.  On information and belief, Defendants engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendants have had actual knowledge of the '779 Patent and that its acts were inducing its customers to infringe the '779 Patent.

44.    Plaintiffs have been harmed by Defendants' infringing activities.

45.    Plaintiffs provided notice of infringement of the '779 Patent to Defendants, but Defendants thereafter continued to infringe the patent.  On information and belief, Defendants' infringement has been and continues to be willful.

## THIRD CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,490,836

46.    The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

47.    On December 10, 2002, U.S. Patent No. 6,490,836 ("the '836 patent"), entitled "Floor Panel With Edge Connectors" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '836 Patent is attached as Exhibit C to this Complaint.

48.    Plaintiffs are the assignee and owner of the right, title and interest in and to the '836 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

49.    In violation of 35 U.S.C. § 271, Defendants have directly infringed and continue to directly infringe, literally and /or under the doctrine of equivalents, the '836 Patent by importing, making, using, selling and/or offering for sale in the United States, including in this Judicial District, products capable of providing features claimed in the '836 Patent ("the '836 Accused Products and Services"), without the authority of Plaintiff.

8

50.     Plaintiffs provided actual notice to Defendant NSL Trading Corp. of its infringement of the '836 Patent in multiple letters, the earliest dated June 2012.

51.     Defendants have had actual knowledge of the '836 Patent and their infringement of that patent since at least the date that the letters were received by Defendants and/or their related entities.

52.     Upon information and belief, Defendants have committed and continue to commit acts of contributory infringement of the '836 patent under 35 U.S.C. § 271(c) by selling, offering to sell, and/or importing products including the '836 Accused Products and Services for the '836 Patent, knowing or willfully blind to the fact that these products and service constitute a material part of the invention, were especially made or especially adapted for use in an infringement of the '836 Patent, and have no substantial non-infringing uses.

53.     Upon information and belief, since at least the date they received the notice letter from Plaintiffs, notifying Defendants that their products infringed the '836 Patent, Defendants have induced and continue to induce others to infringe the '836 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent, actively and knowingly aiding and abetting others to infringe, including, but not limited to, Defendants' customers whose use of the '836 Accused Services and Products constitutes direct infringement of the '836 Patent.  In particular, Defendants acted with specific intent to make others, such as its customers, infringe by advertising and selling the products and by providing written instructions instructing customers on how to assemble and use the products.  On information and belief, Defendants engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendants have had actual knowledge of the '836 Patent and that its acts were inducing its customers to infringe the '836 Patent.

54.     Plaintiffs have been harmed by Defendants' infringing activities.

55.     Plaintiffs provided notice of infringement of the '836 Patent to Defendants, but Defendants thereafter continued to infringe the patent.  On

information and belief, Defendants' infringement has been and continues to be willful.

## JURY DEMAND

56.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

57.     WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

a.  An adjudication that Defendants have infringed the '292, '779, and '836 patents;

b.  A permanent injunction against continued patent infringement by the Defendants pursuant to 35 U.S.C. Section 283 or failing that an ongoing royalty to compensate Plaintiffs for any sales made post-judgment;

c.  An award of damages to be paid by Defendants adequate to compensate Plaintiffs for Defendants' past infringement of the '292, '779, and '836 patents and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

d.  A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiffs reasonable attorneys' fees; and

e.  An award of treble damages under 35 U.S.C. § 284.

1  Dated:  October 16, 2014          LEE TRAN & LIANG LLP

2

3                                    _____/s/ Timothy S. Fox_____

4  Enoch H. Liang
   Lauren C. Sliger

5  Timothy S. Fox
   Attorneys for Plaintiffs Unilin Beheer B.V.

6  and Flooring Industries, LTD Sarl

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT  A

US006874292B2

(12) **United States Patent** (10) Patent No.: **US 6,874,292 B2**

Moriau et al. (45) Date of Patent: **Apr. 5, 2005**

(54) **FLOOR PANELS WITH EDGE CONNECTORS**

(75) Inventors: **Stefan Simon Gustaaf Moriau**, Gent (BE); **Mark Gaston Maurits Cappelle**, Staden (BE); **Bernard Paul Joseph Thiers**, Oostrozebeke (BE)

(73) Assignee: **Unilin Beheer BV, Besloten Vennootschap**, Ijssel (NL)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/266,667**

(22) Filed: **Oct. 9, 2002**

(65) **Prior Publication Data**

US 2003/0024201 A1 Feb. 6, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/471,014, filed on Dec. 23, 1999, now Pat. No. 6,490,836, which is a continuation of application No. 08/872,044, filed on Jun. 10, 1997, now Pat. No. 6,006,486.

(30) **Foreign Application Priority Data**

Jun. 11, 1996 (BE) ............................................. 9600527
Apr. 15, 1997 (BE) ............................................. 9700344

(51) Int. Cl.[7] ................................................ **E04B 2/08**

(52) U.S. Cl. .................. **52/590.2**; 52/586.1; 52/589.1; 52/592.1; 52/592.3

(58) Field of Search ............................ 52/586.1, 589.1, 52/592.1, 592.3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 753,791 A | 3/1904 | Fulghum | |
| 1,124,228 A | 1/1915 | Houston | |
| 1,986,739 A | 1/1935 | Mitte | |
| 1,988,201 A | 1/1935 | Hall | |
| 2,276,071 A | 3/1942 | Scull | |
| 2,430,200 A | 11/1944 | Wilson | |
| 2,740,167 A | 4/1956 | Rowley | |
| 3,045,294 A | 7/1962 | Livezey, Jr. | |
| 3,267,630 A | 8/1966 | Omholt | |
| 3,310,919 A | 3/1967 | Bue et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | A 13098/83 | 10/1983 |
| BE | 417526 | 9/1936 |
| BE | 557844 | 5/1957 |
| CA | 991373 | 6/1976 |
| CH | 200949 | 11/1938 |

(Continued)

OTHER PUBLICATIONS

Abgustaff Kahr Opposition Against Unilin European Patent No. EP 0 843 763 (Jun. 29, 2001).

Akzenta Brief (Arguments) in Support of Intervention in Opposition Against Unilin European Patent Application No. 00201515.4 (Including Partial Translation of Document B2 Cited Therein) (Oct. 10, 2001).

(Continued)

*Primary Examiner*—Carl D. Friedman
*Assistant Examiner*—Yvonne M. Horton
(74) *Attorney, Agent, or Firm*—Bacon & Thomas, PLLC

(57) **ABSTRACT**

Floor covering, including hard floor panels which, at least at the edges of two opposite sides, are provided with coupling parts, cooperating which each other, substantially in the form of a tongue and a groove, wherein the coupling parts are provided with integrated mechanical locking elements which prevent the drifting apart of two coupled floor panels in a direction (R) perpendicular to the related edges and parallel to the underside of the coupled floor panels, and provide a snap-action coupling.

**6 Claims, 10 Drawing Sheets**



**US 6,874,292 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,387,422 | A | 6/1968 | Wanzer |
| 3,526,420 | A | 9/1970 | Brancaleone |
| 3,538,665 | A | 11/1970 | Gall |
| 3,694,983 | A | 10/1972 | Couquet |
| 3,731,445 | A | 5/1973 | Hoffmann et al. |
| 3,759,007 | A | 9/1973 | Thiele |
| 3,859,000 | A | 1/1975 | Webster |
| 4,164,832 | A | 8/1979 | Van Zandt |
| 4,169,688 | A | 10/1979 | Toshio |
| 4,426,820 | A | * 1/1984 | Terbrack et al. ............. 52/594 |
| 4,501,102 | A | 2/1985 | Knowles |
| 4,641,469 | A | 2/1987 | Wood |
| 4,738,071 | A | 4/1988 | Ezard |
| 4,769,963 | A | 9/1988 | Meyerson |
| 4,819,932 | A | 4/1989 | Trotter |
| 5,029,425 | A | 7/1991 | Bogataj |
| 5,179,812 | A | 1/1993 | Hill |
| 5,216,861 | A | 6/1993 | Meyerson |
| 5,295,341 | A | 3/1994 | Kajiwara |
| 5,349,796 | A | 9/1994 | Meyerson |
| 5,502,939 | A | 4/1996 | Zadok et al. |
| 5,630,304 | A | 5/1997 | Austin |
| 5,706,621 | A | * 1/1998 | Pervan ...................... 52/403.1 |
| 5,768,850 | A | 6/1998 | Chen |
| 5,797,175 | A | 8/1998 | Schneider |
| 5,797,237 | A | 8/1998 | Finkell, Jr. |
| 5,860,267 | A | 1/1999 | Pervan |
| 6,023,907 | A | 2/2000 | Pervan |
| 6,029,416 | A | * 2/2000 | Andersson ................. 52/592.1 |
| 6,182,410 | B1 | * 2/2001 | Pervan ..................... 52/403.1 |
| 6,588,166 | B2 | * 7/2003 | Martensson et al. .......... 52/578 |
| 2002/0020127 | A1 | * 2/2002 | Theirs et al. ............. 52/403.1 |
| 2003/0033777 | A1 | * 2/2003 | Theirs et al. ............... 52/390 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 211877 | 10/1940 |
| CH | 562 377 | 4/1975 |
| DE | 1212275 | 3/1966 |
| DE | 1 534 802 | 4/1970 |
| DE | 7102476 | 1/1971 |
| DE | 1534278 | 11/1971 |
| DE | 2238600 | 2/1974 |
| DE | 7402354 | 5/1974 |
| DE | 2502992 | 7/1976 |
| DE | 2616077 | 10/1977 |
| DE | 2917025 | 11/1980 |
| DE | 3041781 | 6/1982 |
| DE | 3246376 | 6/1984 |
| DE | 3343601 | 6/1985 |
| DE | 8604004 | 6/1986 |
| DE | 3512204 | 10/1986 |
| DE | 3544845 | 6/1987 |
| DE | 4215273 | 11/1993 |
| DE | 4242530 | 6/1994 |
| EP | 0248127 | 12/1987 |
| EP | 0 667 936 | B2 | 7/2000 |
| FR | 424057 | 2/1935 |
| FR | 1293043 | 11/1962 |
| FR | 2568295 | 1/1986 |
| FR | 2630149 | 10/1989 |
| FR | 2675174 | 10/1992 |
| FR | 2691491 | 11/1993 |
| FR | 2697275 | 4/1994 |
| GB | 1127915 | 9/1968 |
| GB | 1237744 | 6/1971 |
| GB | 1275511 | 5/1972 |
| GB | 1430423 | 3/1976 |
| GB | 2117813 | 10/1983 |
| GB | 2243381 | 10/1991 |
| GB | 2256023 | 11/1992 |
| JP | 54-65528 | 5/1979 |
| JP | 57-119056 | 7/1982 |
| JP | 3-169967 | 7/1991 |
| JP | 5-148984 | 6/1993 |
| JP | 6-146553 | 5/1994 |
| JP | 6-200611 | 7/1994 |
| JP | 6-56310 | 8/1994 |
| JP | 6-320510 | 11/1994 |
| JP | 7-076923 | 3/1995 |
| JP | 07180333 | 7/1995 |
| JP | 7-300979 | 11/1995 |
| JP | 7-310426 | 11/1995 |
| JP | 8-109734 | 4/1996 |
| JP | 8-270193 | 11/1996 |
| NL | 76 01773 | 8/1976 |
| SE | 372051 | 12/1974 |
| SE | 450141 | 5/1987 |
| SE | 501014 | 10/1994 |
| SE | 502994 | 3/1996 |
| WO | WO 84/02155 | 6/1984 |
| WO | WO 93/13280 | 7/1993 |
| WO | WO 94/01628 | 1/1994 |
| WO | WO 94/01688 | 1/1994 |
| WO | WO 94/26999 | 11/1994 |
| WO | WO 96/23942 | 8/1996 |
| WO | WO 96/27719 | 9/1996 |
| WO | WO 96/27721 | 9/1996 |

### OTHER PUBLICATIONS

EP Floor Products Opposition Against Unilin European Patent No. EP 0 843 763 (Oct. 27, 2001).

Hornitex–Werke Opposition to Unilin European Patent No. EP 0 843 763 (Jul. 4, 2001).

Kronospan Action to Nullify Unilin German Utility Model Patent No. 297 24 428 U1, including Cited Documents E2 (with Partial Translation) E3; E5 and E6 (with Translation) (Aug. 9, 2001).

Kronospan Opposition Against Unilin European Patent No. EP 0 843 763 (Jul. 14, 2001).

Kronotex Arguments in Appeal from Decision of Germany Patent Court Upholding Validity of Unilin German Utility Model Patent No. DE–UM 29 710 175 (Jul. 17, 2000).

Kronotex Arguments filed before Federal Patent Court in Appeal from Adverse Decision of German Patent Office Upholding Validity on Unilin German Utility Model Patent No. DE–UM 297 10 175 (Jul. 24, 2001).

Kronotex Opposition Against Unilin Australian Patent Application No. 713,628 AU–B (32569/97) (Sep. 1, 2000).

Kronotex Opposition Against Unilin European Patent No. EP 0 843 763 (Jun. 29, 2001).

Observations by Third Party (Kandl) Regarding Patentability of Unilin European Patent Application No. 00201515.4 (including Partial Translation of Document E2 Cited Therein) (Oct. 10, 2001).

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Oct. 18, 2001.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Dec. 18, 2001.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 14, 2002.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 24, 2002.

**US 6,874,292 B2**

Page 3

"Selbst Teppichböden, PVC und Parkett verlegen", 1985 Compact Verlag München.

Valinge Aluminum Observations Regarding Unilin European Patent No. EP 0 83 763 (Nov. 19, 1998).

Valinge Aluminum Opposition Against Unilin Australia Patent Application No. 713 628 (AU–B 325 60/97) (Jun. 6, 2000).

Valinge Aluminum Opposition Against Unilin New Zealand Patent 3,29,581 (Jun. 2001).

Valinge Aluminum Opposition Against Unilin European Patent No. EP 0 843 763 with Copies of Cited Documents (Aug. 6, 2001).

*Webster's Dictionary*, definition of "scarf", p. 862, 1992, PAMCO Publ. Comp. Inc. (N.Y.)

Judgment of British Patents County Court in Patent Infringement Action PAT Nos. 02010 and 02014 involving British Patent No. EP (UK) 1 024 034 of Unilin Beheer, Sep. 25, 2003.

Transcript of Proceedings—Day 5, County Court of Patent Infringement Action PAT Nos. 02010 and 02014 involving British Patent No. EP (UK) 1 024 034 of Unilin Beheer, Jul. 18, 2003.

Expert Report of Dr. Hugh David Mansfield–Williams in British Patents County Court cases PAT 02010 and 02014, signed Jul. 7, 2003.

Expert Report of Mark Anthony Irle, signed Jul. 7, 2003, with Bundle 8A (Exhibits to report).

Notification from German PTO regarding utility model revocation proceedings against Unilin Beheer B.V. utility model No. 297 24 428 (Apr. 7, 2003). (with translation).

"Decision of Opposition Division of European Patent Office regarding EP 1 024 234 of Unilin Beheer N.V., mailed Jul. 18, 2004.".

* cited by examiner



*Fig.1*



*Fig.8*







*Fig.9*

*Fig.10*

*Fig.11*



*Fig. 12*

*Fig. 13*



*Fig.14*

*Fig.15*



*Fig.16*



*Fig.17*

*Fig.18*

*Fig.19*



*Fig.20*



*Fig.21*



*Fig.22*

*Fig.23*



*Fig.24*



*Fig.25*

US 6,874,292 B2

**1**

# FLOOR PANELS WITH EDGE CONNECTORS

### RELATED APPLICATION DATA

This application is a continuation of U.S. patent application Ser. No. 09/471,014, filed Dec. 23, 1999, now U.S. Pat. No. 6,490,836; which is a continuation of application Ser. No. 08/872,044 filed Jun. 10, 1997, now U.S. Pat. No. 6,006,486.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to a floor covering made of hard floor panels.

2. Related Technology

In the first instance, the invention is intended for so-called laminated floors, but generally it can also be applied for other kinds of floor covering, consisting of hard floor panels, such as veneer parquet, prefabricated parquet, or other floor panels which can be compared to laminated flooring.

It is known that such floor panels can be applied in various ways.

According to a first possibility, the floor panels are attached at the underlying floor, either by glueing or by nailing them on. This technique has a disadvantage that is rather complicated and that subsequent changes can only be made by breaking out the floor panels.

According to a second possibility, the floor panels are installed loosely onto the subflooring, whereby the floor panels mutually match into each other by means of a tongue and groove coupling, whereby mostly they are glued together in the tongue and groove, too. The floor obtained in this manner, also called a floating parquet flooring, has as an advantage that it is easy to install and that the complete floor surface can move which often is convenient in order to receive possible expansion and shrinkage phenomena.

A disadvantage with a floor covering of the abovementioned type, above all, if the floor panels are installed loosely onto the subflooring, consists in that during the expansion of the floor and its subsequent shrinkage, the floor panels themselves can drift apart, as a result of which undesired gaps can be formed, for example, if the glue connection breaks.

In order to remedy this disadvantage, techniques have already been through of whereby connection elements made of metal are provided between the single floor panels in order to keep them together. Such connection elements, however, are rather expensive to make and, furthermore, their provision or the installation thereof is a time-consuming occupation.

Examples of embodiments which apply such metal connection elements are described, among others, in the documents WO 94/26999 and WO 93/13280.

Furthermore, couplings are known which allow coupling parts to snap fit into each other, e.g., from the documents WO 94/1628, WO 96/27719 and WO 96/27721. The snapping-together effect obtained with these forms of embodiment, however, does not guarantee a 100-percent optimum counteraction against the development of gaps between the floor panels, more particularly, because in fact well-defined plays have to be provided in order to be sure that the snapping-together is possible.

From GB 424.057, a coupling for parquetry parts is known which, in consideration of the nature of the coupling, only is appropriate for massive wooden parquetry.

**2**

Furthermore, there are also couplings for panels known from the documents GB 2.117.813, GB 2,256.023 and DE 3.544.845. These couplings, however, are not appropriate for connecting floor panels.

### BRIEF SUMMARY OF THE INVENTION

The invention aims at an improved floor covering of the aforementioned type, the floor panels of which can be coupled to each other in an optimum manner and/or the floor panels of which can be manufactured in a smooth manner, and whereby preferably one or more of the aforementioned disadvantages are excluded.

The invention also aims at a floor covering which has the advantage that no mistakes during installing, such as gaps and such, can be created.

Furthermore, the invention also aims at a floor covering whereby the subsequent development of gaps is excluded or at least counteracted in an optimum manner, whereby also the possibility of the penetration of dirt and humidity is minimized.

To this aim, the invention relates to a floor covering, consisting of hard floor panels which, at least at the edges of the two opposite sides, are provided with coupling parts, cooperating which each other, substantially in the form of a tongue and a groove, wherein the coupling parts are provided with integrated mechanical locking elements which prevent the drifting apart of two coupled floor panels into a direction perpendicular to the related edges and parallel to the underside of the coupled floor panels. Hereby, these coupling parts are optimalized in such a manner that they allow that any form of play is counteracted and preferably is excluded.

By integrated mechanical locking elements is understood that these form a fixed part of the floor panels, either by being connected in a fixed manner to the floor panels, or by being formed in one piece therewith.

In a first important preferred form of embodiment, the coupling parts are provided with locking elements which, in the engaged position of two or more of such floor panels, exert a tension force upon each other which force the floor panels towards each other. As a result of this that not only the formation of gaps counteracted during installation, but also in a later stage the development of gaps, from any causes whatsoever, is counteracted.

According to another characteristic of the intention, the coupling parts, hereby are formed in one piece with the core of the floor panels.

According to a second important preferred embodiment, the aforementioned optimalization is achieved in that the floor covering panel possesses the following combination of characteristics: the coupling parts and locking elements are formed in one piece with the core of the floor panels; the coupling parts have such a shape that two subsequent floor panels can be engaged into each other exclusively by snapping together in a vertical turning, whereby each subsequent floor panel can be inserted laterally into the previous; the coupling parts are interlocked free from play in all directions in a plane extending perpendicular to the aforementioned edges; the possible difference between the upper and lower lip of the lips which border the aforementioned grooves, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove, is smaller than one time the total of the thickness of the panel; the total thickness of each related floor panel is larger than or equal to 5 mm; and that the basic material of the floor panels, of which the aforementioned core and locking elements are

US 6,874,292 B2

3

formed, consists of a ground product which, by means of a binding agent or by means of melting together, is made into a unitary composite, and/or of a product on the basis of synthetic material and/or of a chip board with fine chips.

Due to the fact that the coupling parts provide for an interlocking free from play, as well as due to the fact that these coupling parts are manufactured in one piece, from the basic material of the floor panels, a perfect connection between adjacent floor panels can always be guaranteed, even with repeated expansion and shrinkage of the floor surface.

This combination of characteristics can be combined or not with the aforementioned characteristic that the locking elements exert a tension force upon each other when panels are joined together.

According to a third important preferred embodiment, the characteristics of which may or may not be combined with the characteristics of the embodiments described above, the floor covering is characterized in that the lower lip which limits or defines the lower side of the groove, extends beyond the upper lip in the plane of the panel; the locking elements are formed at least of a contact portion which inwardly slopes downward; and that this portion, at least partially, is located in the portion of the lower lip which extends beyond the upper lip. The advantages of these features will appear from the further description.

According to a preferred form of embodiment, the floor panels are configured as elongated panels and the coupling parts described above are applied along the longitudinal sides of these panels.

According to a particular form of embodiment, coupling parts are provided at the other two sides, too, either of another construction than described above or not.

In the most preferred form of embodiment, for the basic material use shall be made of the aforementioned product, which, as said, is ground and, by means of a binding agent, made into a unitary composite material. More particularly, for the core use shall be made of finely-ground wood which preferably is glued, more particularly, moisture resistant glued. Still more particularly, for the core use shall be made of so-called HDF board (High Density Fibreboard) or MDF board (Medium Density Fibreboard) which is highly compressed ground wood particles (fibers) and binder material. Hereinafter, the wood component of the core material shall be referred to as "wood product".

The fact that the invention is applied to floor panels the basic material of which consists of the material described above, offers the advantage that with the processing of this material, very smooth surfaces are obtained whereby very precise couplings can be realized, which, in first instance, is important in the case of a snap-together connection and/or turning connection free from play. Also, very special forms of coupling parts can be manufactured in a very simple manner because the aforementioned kinds of material can be processed particularly easy.

The surfaces obtained with HDF and MDF also have the advantage that the floor panels mutually can be shifted readily alongside each other in interlocked condition, even when engaged with a tensioning force.

The applicants also discovered that the aforementioned materials, in particular HDF and MDF, show ideal features in order to realize a connection, such as mentioned above, as these material show the right features in respect to elastic deformation in order to, on the one hand, realize a snap-together effect, and, on the other hand, receive expansion and shrinkage forces in an elastic manner, whereby it is

4

avoided that the floor panels come unlocked or are damaged in an irreparable manner.

In the case that for the core use is made of a material based on synthetic material, to this end solid synthetic material can be used as well as a mixture of synthetic materials, eventually composed of recycled materials.

The floor covering preferably is formed by joining the floor panels into each other free of glue. Hereby, the connections are of such nature that the floor panels can be disassembled without being damaged, such that, for example, when moving from one residence or location to another, they can be taken along in order to be placed down again. It is, however, clear that a glueing between tongue and groove is not excluded.

The invention, of course, also relates to floor panels which allow the realization of the aforementioned floor covering.

The invention also relates to a method for the manufacturing of the aforementioned floor panels with which the advantage that the tongues and/or grooves, including the corresponding locking means, can be provided at the floor panels at high production speeds without problems. More particularly, it aims at a method which allows that the rather complicated forms of the tongue and the groove of the aforementioned floor panels can be formed completely by means of milling cutters, the diameter of which can be chosen independent of the form to be realized, such that the use of small milling cutters, for example finger cutters, with diameters smaller than the depth of the tongue or groove can be excluded.

In accordance with this method the tongue and/or groove is formed by means of a milling process using at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in respect to the related floor panel. During each of the aforementioned milling cycles, preferably substantially the final form of one flank, either of the tongue or of the groove, is formed.

For the aforementioned two milling cycles, thus, milling cutters are used which extend outside the groove, respectively the tongue. More particularly the diameters of these milling cutters shall at least be 5 times and even better 20 times larger than the thickness of the floor panels.

The use of milling cutters having the aforementioned diameters has as an advantage that the normal production speeds can be maintained which are also applied during milling of a classical straight tongue and groove. There is also the advantage obtained that the installation of such milling cutters induce only minor or no additional costs because such milling cutters can be placed directly upon a motor shaft and/or the conventional machines can be used.

BRIEF DESCRIPTION OF THE DRAWINGS

With the intention of better showing the characteristics according to the invention, in the following, as an example without any limitative character, several preferred forms of embodiment are described, with reference to the accompanying drawings, wherein:

FIG. 1 represents a floor panel of a floor covering according to the invention;

FIG. 2, on a larger scale, represents a cross-section according to line II—II in FIG. 1;

FIGS. 3 and 4 represent how two floor panels with coupling parts according to FIG. 2 match into each other;

FIG. 5, on a larger scale, represents a cross-section according to line V—V in FIG. 1;

FIGS. 6 and 7 represent how two floor panels with coupling parts according to FIG. 5 match into each other;

5

FIGS. 8 to 11 represent a number of variants of coupling parts of floor panels according to the invention;

FIG. 12 schematically represents how the floor parts can be provided with coupling parts;

FIG. 13 represents a cross-section according to line XIII—XIII in FIG. 12;

FIGS. 14 to 21, on a larger scale and in cross-section, represent the penetration of the milling cutters which are indicated in FIG. 12 with arrows F14 to F21;

FIG. 22 represents a floor panel according to the invention;

FIG. 23, on a larger scale, represents the coupling of two floor panels of FIG. 22;

FIGS. 24 and 25 represent two manners of coupling floor panels according to FIG. 22 to each other.

DETAILED DESCRIPTION

The invention relates to a floor covering which is composed of hard floor panels 1, for example, such as a laminated panel as shown in FIG. 1.

These floor panels 1 can be of various shape, for example, rectangular or square, or of any other shape.

In the most preferred form of embodiment, they shall be manufactured in an elongated form, such as shown in FIG. 1, for example, with a length of 1 to 2 meters. The thickness, however, can also vary, but is preferably 0.5 to 1.5 cm, and more particularly 0.8 cm.

Each floor panel 1 is, at least at the edges of two opposite sides 2–3, provided with coupling parts 4–5 which permit two adjacent identical floor panels 1 to be coupled to each other.

According to the invention, the coupling parts 4–5, as represented in the FIGS. 2 to 4, are provided with integrated mechanical locking parts or locking elements 6 which prevent the drifting or sliding apart of two coupled floor panels 1 in a direction D perpendicular to the respective sides 2–3 and parallel to the underside 7 of the coupled floor panels 1; the coupling parts 4–5 and the locking elements 6 are formed in one piece with the core 8 of the floor panels 1; the coupling parts 4–5 have such a shape that two subsequent floor panels 1 can be engaged into each other solely by snapping-together and/or turning after the coupling parts are partially engaged, whereby each subsequent floor panel 1 can be laterally inserted into the previous; and the coupling parts 4–5 preferably are interlocked free from play in all directions in a plane which is located perpendicular to the aforementioned edges.

In the case of floor panels 1 with an elongated shape, as represented in FIG. 1, the respective coupling parts 4–5 are located at the longitudinal sides 2–3.

The coupling parts 4–5 can be realized in various forms, although the basic forms thereof will always be formed by a tongue 9 and a groove 10.

In the form of embodiment of FIGS. 2 to 4, the related floor panel 1 is provided with coupling parts 4–5 and locking means or locking elements 6 which allow two floor panels 1 to be mutually engaged by means of a turning movement, without the occurrence of any snap-together effect.

In the represented example, the locking elements 6 consist of a first locking element 11, formed by a protrusion with a bent round shape at the lower side 12 of the tongue 9, and a second locking element 13 (shown in FIG. 2), formed by a recess with a bent hollow or downwardly concave shape in the lower wall 14 of the groove 10.

6

The locking elements 11–13 ensure that two floor panels 1 which are coupled to each other can not move laterally in the horizontal plane with respect to each other.

In order to enable two floor panels 1 to be inserted into each other by means of a turning movement, the curvatures preferably are circular. The bottom side 12 of locking means or locking elements 6 has a curvature with a radius R1, the center of which coincides with the respective upper edge 15 of the floor panel 1, whereas the lower wall 14 of the locking part 5 has a curvature with a radius R2 which is equal to the radius R1, but its center coincides with the respective upper edge 16. Radii R1 and R2 may also be applied which are larger or smaller than the distance to the upper edge 15, 16 respectively, and/or which differ from each other in size.

The upper side 17 of the tongue 9 and the upper wall or side 18 of the groove 10 are preferably flat and preferably are located in the horizontal plane.

The inner side 20 of the groove 10 and the front side 19 of the tongue 9 of the two interlocked floor panels 1 preferably do not fit closely against each other, such that an intermediate space 21 is created between them into which possible dust remainders or such can be pushed away by means of the tongue 9.

The tongue 9 and the groove 10 preferably have shapes which are complementary to each other, such that the tongue 9 in the engaged condition of two identical floor panels 1 precisely sits against the upper wall 18 and the lower wall 14 of the groove 10, whereby a pressure P, exerted against the upper lip 22, is received or reacted not only by this lip 22, but by the complete structure, because this pressure can be transmitted through the tongue 9 and the lower lip 23 to cause the panels to be urged towards each other.

It is, however, clear that a number of minor deviations to these complementary forms can occur which, anyhow, have no or almost no effect upon the receipt and transmission of pressure forces. For example, a chamfer 24 on lip 22 and a recess 25 can be provided, as represented in FIGS. 2 to 4, as a result of which the subsequent floor panels 1 can easily be pushed and guided into each other, such that no possible ridges in the subflooring or such render good insertion difficult.

As represented in the FIGS. 5 to 7, the floor panels 1 according to the invention can also, along the sides 26–27 which are at a right angle to the sides 2–3, be provided with coupling parts 28–29 which have locking elements 30, too. The coupling parts 28–29 are preferably also realized in the shape of a tongue 31 and a groove 32. Hereby, the locking elements 30 do not have to be of the same nature as the locking elements 6.

Preferably, at the sides 26–27 locking elements are provided which allow for an engagement and interlocking by means of a lateral translation movement in direction T only, as represented in FIGS. 6 and 7. To this aim, the locking elements 30 consist of a snap-together connection with locking elements 33 and 34 which grip behind each other.

As represented in FIGS. 5 to 7, the locking element 33 preferably consists of a protrusion of the lower side 35 of the tongue 31 which can be located in a recess 36 in a lower lip 43 extending distally from the lower wall 37 of the groove 32. The locking element 34 is formed by the upward directed part or protrusion which defines the distally outer end of recess 36.

In this case, the locking elements 33–34 have contact surfaces 38–39 which are parallel to each other and preferably extend in an inclined manner, according to a direction which simplifies the snapping-together of the panels. The

7

common plane of tangency L which is determined by the common tangent at the meeting point or area of surfaces 38–39, hereby forms an angle A sloping inwardly and downwardly from an outer region to an inner region relative to the underside 7, which angle is smaller than 90°.

The locking elements 33–34 preferably are provided with inclined portions 40 and 41 which, when two floor panels 1 are engaged, cooperate with each other in such a manner that the locking elements 33–34 can easily be pushed over each other until they grip behind each other by means of a snap-together effect (FIGS. 6 and 7).

The thickness W1 of the tongue 31 preferably is equal to the width W2 of the groove 32, such that compression pressure P applied to the upper lip 42 is reacted by the tongue 31 which, in its turn, then is reacted by the lower lip 43.

Analogous to the chamfer 24 and recess 25, a recess 44 and a chamfer 45 are provided also at the edges 28–29.

It is noted that such a snap-together coupling can also be applied at the edges 2–3. Hereby, this can be a snap-together coupling analogous to these of FIGS. 5 to 7, but this can also be a snap-together coupling using other forms of coupling configurations, for example, such as represented in FIGS. 8 and 9. Contrary to the locking elements 33–34 which consist of rather local protrusions, in the forms of embodiment of FIGS. 8 and 9 use is made of locking elements 46–47 which, in comparison to the total width B of the coupling, extend over a rather large distance.

In this case, the locking elements 46–47 are also provided at the lower side 12 of the tongue 9 and the lower wall 14 of the groove 10.

According to FIG. 8, the locking elements 46–47 have contact surfaces 48–49 which are at an angle with the plane of the floor panel 1. In this manner, a coupling is obtained which is interlocked in a particularly fixed manner.

As represented in FIG. 9, the locking elements 46–47 possibly can be configured in such a manner that substantially only a linear contact is obtained, for example, because the contact surfaces directed towards each other are formed with different curvatures.

The surfaces, directed towards each other, of the locking elements 46–47 hereby consist of curved surfaces. The common plane of tangency L forms an angle A which is smaller than 90°, and more preferably is smaller than 70°.

In this manner, the locking element 46 preferably has two portions with a different curvature, on one hand, a portion 50 with a strong curvature and, on the other hand, a portion 51 with a weak curvature. The portion 50 with the strong curvature provides for the formation of a firm coupling. The portion 51 with the weak curvature facilitates the coupling parts 4–5 to be brought into each other easily. The intermediate space S forms a chamber which offers space for dust and the like which, when engaging two floor panes 1, inevitably infiltrates there.

In the case of a snap-together connection, for example, a connection such as represented in FIGS. 7 to 9, preferably the tongue 9–31 has a shape that thickens from below, which then can cooperate with a widened portion in the groove 10.

In FIG. 10, a variant is represented whereby at least at the level of the upper edges 15–16, a sealing material 52 is provided, as a result of which a watertight sealing can be assured. This sealing material 52 may consist of a strip or covering which is provided previously at the floor panel 1, either at one or both upperside edges 15–16.

In FIG. 11, a further variant is represented, whereby the locking element 6 is formed by an upward directed portion

8

53 at the tongue 9, which as a result of a turning movement of the panel, is brought behind a downward-directed portion 54 on the upper wall 18. More particularly, this is obtained by forming the upper side 17 and the upper wall 18 with a curvature R3, the center of which is situated at the upperside edges 15–16, and forming the lower side 12 and the lower wall 14 with a radius R4, the center of which is also situated at the upperside edges 15 and 16, respectively. These radii R3–R4 can be chosen otherwise, too.

In general, according to the invention, the difference between, on one hand, the radius R1, R3 respectively, and, on the other hand, the radius R2, R4 respectively, preferably should not be larger than 2 mm.

It is also preferred that the center of these radii be situated inside the circle C1, C2 (see FIG. 2) respectively, which extends with a radius R5 of 3 mm centered at upperside edge 15, 16 respectively.

Finally is noted that, according to the invention, the lower lip 23–43, as represented in FIGS. 2 to 7, can be formed distally longer than the upper lip 22–42. This has an advantage that the coupling parts 4–5–28–29 can be shaped in an easier manner by means of a milling cutter or the like. Furthermore, this simplifies the engagement of two floor panels 1, because each subsequent floor panel 1 during installation can be placed upon the protruding lower lip 23–43, as a result of which the tongue 9–31 and the groove 10–32 automatically are positioned in front of each other.

The embodiments wherein the lower lip 23 is equal to or distally shorter than the upper lip 22, in their turn, offer the advantage that no protruding lip 23 remains at the extreme edge of the floor which might cause problems in finishing the floor installation.

In order to allow for a smooth assembly, to guarantee the necessary stability and firmness and in order to limit the quantity of material to be cut away, the difference E between the distally outer edge of the upper lip 22–42 and the distally outer edge of the lower lip 23–43, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove 10, should preferably be kept smaller than one time the total thickness F of the floor panel 1. For stability's sake, normally this total thickness F shall never be less than 5 mm.

The small dimension of the difference E offers the advantage that the lower lip need not be strengthened by a reinforcement strip or the like.

According to a particular form of embodiment, the central line M1 through the tongue 9 and the groove 10 is situated lower than the center line M2 of the floor panel 1, such, that the upper lip 22–42 is thicker than the lower lip 23–43. In first instance, this is essential in this kind of connection, because then it is the lower lip 23–43 which bends, whereby the upper side of the floor panel 1 is kept free of possible deformations.

As explained in the introduction, for the core 8 a material is chosen from the following series:

   a. a ground product which, by means of a binding agent or by means of melting together is made into a unitary composite material;
   a product based on synthetic material;
   chip board with fine chips.

The invention shows its usefulness, in first instance, preferably with laminated flooring, due to the reasons explained in the introduction.

As represented in the examples of the FIGS. 2 to 11, such laminated flooring preferably consists of a core 8 made of MDF medium density fiberboard board, HDF high density

US 6,874,292 B2

9

10

fiberboard board or similar, whereby at least at the upper side of this core 8 one or more layers of material are provided.

More particularly, it is preferred that the laminated flooring is provided with a decorative layer 55 and a protective top layer 56. The decorative layer 55 is a layer, impregnated with resin, for example, made of paper, which can be imprinted with a variety of patterns, such as a wood pattern, a pattern in the form of stone, cork, or similar or even with a fancy pattern. The protective top layer 56 preferably also consists of a layer saturated with resin, for example, melamine resin, which in the final product is transparent.

It is clear that still other layers can be applied, such as an intermediate layer 57 upon which the decorative layer 55 is provided.

Preferably, also a backing layer 58 shall be applied at the underside 7, forming a counterbalancing element for the top layers and, thus, guaranteeing the stability of the form of the floor panel 1. This backing layer 58 may consist of a material, for example paper, impregnated with a resin, for example, a melamine resin.

As represented schematically in FIG. 12, the tongue 9 and the groove 10, and preferably also the tongue 31 and the groove 32 are formed by means of a milling process. In the case that a profile has to be applied on all four sides, the floor panels 1 preferably shall be displaced by means of two sequential perpendicular movements V1 and V2, whereby during the first movement profiles at two opposite edges are provided, in this case the longitudinal edges, by means of milling devices 59–60, whereas during the second movement profiles are provided at the other edges, in this case the small edges, by means of milling devices 61–62. During these processing, the floor panels 1 preferably are put with their decorative layer directed downward.

According to an important characteristic of the invention, each respective tongue 9–31 and groove 10–32 are formed by means of a milling process with at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in reference to the related floor panel 1.

This is illustrated in FIGS. 13, 14 and 15, wherein it is represented how a groove 10 is realized by means of two milling cycles by means of two milling cutters 63 and 64. FIGS. 16 and 17 represent how the tongue 9 is shaped by means of milling cutters 65 and 66.

The FIGS. 18–19 and 20–21 represent similar views showing how the groove 32 and the tongue 31 are shaped by means of milling cutters 67–68 and 69–70, positioned at an angle.

During each of the aforementioned milling passes, substantially the final shape of one flank is fully realized. For example, the milling cutter 63 of FIG. 14 determines the final shape of the lower flank 71 of the groove 10, whereas the milling cutter 64 determines the final shape of the upper flank 72.

As mentioned in the introduction, preferably milling cutters 63 to 72 shall be used, having diameters G which are at least 5 times, and even better at least 20 times larger than the thickness F of the floor panels 1.

Apart of the mentioned milling cutters, preferably still other milling cutters are applied, for example, in order to remove a part of the material to be removed during a first premachining cycle.

In the FIGS. 22 to 25, a particularly preferred form of embodiment of a floor panel 1 according to the invention is represented. Hereby, the parts which correspond with the previous embodiments are indicated with corresponding references.

An important characteristic herein consists in that the coupling parts 4–5 are provided with locking elements 6 which, in engaged condition with the panels in a common plane, exert a tension force upon each other, as a result of which the engaged floor panels 1 are forced towards each other in compression. As represented, this is realized preferably by providing the coupling parts with an elastically yieldable or bendable portion, in this case the lower lip 43, which, in engaged condition, is at least partially bent from a relaxed, unbent position and in this way creates a tension force which results in the engaged floor panels 1 being forced towards each other. The resultant bending V, as well as the tension force K, are indicated in the enlargement view of FIG. 23.

In order to obtain the tension force K pressing together the engaged floor panels 1, the bendable portion, in this case the lip 43, preferably is provided, as represented, with an inwardly and downwardly inclined contact surface 73 which preferably can cooperate with a corresponding contact surface 74 on tongue 9. These contact surfaces 73–74 are similar to the aforementioned contact surfaces 39–38 and also similar to the inclined portions of the lower lip of FIGS. 2 to 4.

In the FIGS. 2 and 5, the portions form complementary matching shapes; it is, however, clear that, by a modification, also a tension effect similar to that shown in FIG. 23 can be realized.

Due to, on one hand, the contact along the angle A, and, on the other hand, the fact that a tension force K is created, a compression force component K1 is produced, as a result of which the floor panels 1 are drawn against each other in compression.

Preferably, the angle A of the mutual plane of tangency of contact surfaces 73–74 relative to the horizontal plane is situated between 30 and 70 degrees. In the case that use is made of the embodiment whereby a tension force K is realized, an angle A of 30 to 70 degrees is ideal in order, on one hand, to effect an optimum pressing-together of the floor panels 1 and, on the other hand, to ensure that the floor panels 1 can easily be engaged and respectively disassembled.

Although the pressing or compression force component K1 preferably is delivered by the aforementioned lip 43, the invention does not exclude other forms of locking elements or structures whereby this force is delivered by other bendable portions.

It is noted that the bending V is relatively small, for example, several hundredths up to several tenths of a millimeter, and does not have an influence upon the placement of the floor covering. Furthermore it should be noted that such floor covering generally is placed upon an underlayer (not shown) which is elastically compressible, as a result of which the bending V of the lip 43 only produces local bending of the underlayer.

Due to the fact that the lip 43 is bent apart and that it remains somewhat bent apart in engaged position, the additional advantage is obtained that, when exerting a pressure upon the floor covering, for example, when placing an object thereupon, the pressing-together compressive force is enhanced and, thus, the development of gaps is counteracted even more.

It is noted that the inventors have found that, contrary to all expectations, an ideal tension force can be realized by manufacturing the coupling parts 4–5, including the locking elements 33–34, and preferably the complete core 8, of HDF board or MDF board, although these material normally only allow a minor elastic deformation.

US 6,874,292 B2

11

HDF and MDF also offer the advantage that smooth surfaces are obtained, as a result of which the locking elements can be moved easily over each other.

According to a variant of the invention, the tension force can also be supplied by means of an elastic compression of the material of the coupling parts themselves, to which end these coupling parts, and preferably the complete core 8, would be manufactured using an elastically compressible material.

A further particular characteristic of the embodiment of FIGS. 22 to 25 consists in that the floor panels 1 can be selectively engaged by means of a turning movement, as represented in FIG. 24, as well as by means of laterally shifting them towards each other in substantially a common plane, as represented in FIG. 25, preferably in such a manner that, during the engagement by means of the turning movement with the coupling parts partially engaged, a maximum bending Vm results in the coupling parts, more particularly in the lip 43, which bending Vm is less pronounced, if not nonexistent, as in the FIGS. 2 to 4, in comparison to the bending Vm which results when the floor panels 1 are engaged by means of shifting them towards each other, as in FIG. 15.

The advantage of this consists in that the floor panels 1 can be engaged easily by means of a turning movement, without necessitating use of a tool therefore, whereas it still remains possible to engage the floor panels also by means of shifting them laterally. This latter is useful, in first instance, when the last panel has to be placed partially under a door frame or similar situation. In this case, the floor panel 1 can be pushed under the door frame with the side which does not have to be engaged and subsequently, possibly by means of tools, can be snapped into the adjacent floor panel by lateral sliding together.

It is noted that the shapes of the coupling parts 4–5 shown in FIGS. 22 to 25 can also be used for the coupling parts 28–29 of the short sides of the panels.

According to the invention, in the case that the four sides 2–3–26–27 are provided with coupling pars 4–5–28–29, these coupling parts can be formed in such a manner that in one direction a firmer engagement than in the other direction is effected. In the case of elongated floor panels 1, for example, such as represented in FIG. 1, the locking at the small sides 26–27 preferably shall be more pronounced than at the longitudinal sides 2–3. The length of the parts at the small sides, namely, is smaller and, in principle, less firm. This is compensated for by providing a more pronounced locking.

This difference in engagement can be obtained by shaping the contact surfaces 73–74 with different angles.

Preferably, the aforementioned protrusion, more particularly the locking element 33, is bounded by at least two portions 75–76 (shown in FIG. 22), respectively a portion 75 with a strong (steep) inclination which provides for the locking, and a portion 76 with a weaker (less inclined) inclination which renders the engagement or guidance of the coupling parts easier. In the embodiment of FIGS. 22 to 25, these portions 75–76 are formed by straight planes, but, as already described with reference to FIG. 9, use can also be made of curved portions 50–51. In FIG. 5, these are the contact surface 38 and the inclined portion 40.

In the preferred form of the invention, the floor panels 1 comprise coupling parts 4–5 and/or 28–29 exhibiting one of the following or the combination of two or more of the following features:

a curvature 77 (shown in FIG. 22) at the lower side of the tongue 9 and/or a curvature 78 at the lower lip 43 which

12

form a guidance when turning two floor panels 1 into each other, with the advantage that the floor panels 1 can be engaged into each other easily during installation;

roundings 79–80 at the edges of the locking elements 33–34, with the advantages that the locking elements can easily shift over each other during their engagement, or during disassembly of the floor panels 1 and that the locking elements will not be damaged, for example, crumble away at their edges, even if the floor panels are engaged and disassembled;

dust chambers 81, or spaces 21 as in FIG. 4, between all sides, directed laterally towards each other, of the engaged floor panels 1, with the advantage that inclusions which get between the floor panels 1 during the engagement do not exert an adverse influence upon good engagement;

a shaping of the tongue 9 which is such, for example, by the presence of a chamfer 82, that the upper side of the tongue 9 becomes situated from the first joining together or substantial contact of the panels, under the lower side of the upper lip 42 when the floor panels 1 are pushed towards each other in substantially the same plane, as indicated in FIG. 25, with the advantage that the front extremity or end of the tongue 9 does not press against the front side of the upper lip 42 or the front edge of the bottom lip 43 when the floor panels are pushed towards each other in the same plane;

a ramp surface 83, hereinbefore also called inclined portion 41, formed at the distally outer end of the lower lip 43, with the advantage that the locking elements 33–34 shift smoothly over each other and that the lower lip 43 is bent uniformly;

in the engagement direction only one important contact point which is formed by a section 84 at the location of the upper side edges of the floor panels 1, with the advantage that the aforementioned tension force is optimally transferred to the upper side of the floor panels 1 and that the development of openings between the floor panels 1 is counteracted;

contact surfaces 85–86, more particularly abutment surfaces, formed by the upper side of the tongue 9 and the upper side of the groove 10 which, over the largest portion of their length, are flat and run parallel to the plane which is defined by the floor panels 1, as well as contact surfaces cooperating with each other, formed by curvatures 77–78, with the advantage that no mutual displacement in height between two engaged floor panels 1 is possible, even if the insertion depth of the tongue 9 into the groove 10 should vary due to various causes; in other words, no height differences may occur between the adjacent floor panels.

In the embodiment of FIGS. 22 to 25, all these characteristics are combined; it is, however, clear that, as becomes evident from FIGS. 2 to 11, these features can also be provided separately or in a limited combination with one another.

As becomes evident from FIGS. 5 to 7 and 22 to 25, an important characteristic of the preferred embodiment of the invention consists in that the cooperative locking element 6, in other words, the portion providing for the snap-together and engagement effect, are situated in that portion of the lower lip 23–43 which extends beyond the distal edge of the upper lip 22–42, more particularly, the lowermost point 87 of the locking part 33 is situated under the top layer of the floor panel 1. For clarity's sake, this top layer is indicated in the FIGS. 22–25 only as a single layer.

US 6,874,292 B2

13      14

It should be noted that the combination of features, the lower lip 23–43 extending further than the upper lip 22–42; the locking elements 6 being formed at least by means of a contact surface portion which inwardly slopes downward, and wherein this portion, at least partially, is located in the portion of the lower lip 23–43 which extends distally beyond the upper lip 22–42, is particularly advantageous, among others, in comparison with the couplings for floor panels described in the documents WO 94/01628, WO 94/26999, WO 96/27719 and WO 96/27721. The sloping contact surface portion offers the advantage that the floor panels 1 can be disassembled again. The fact that this sloping portion is situated in the extended portion of the lower lip 23–43 adds the advantage that no deformations can occur during coupling which manifest themselves up to the top layer.

According to a preferred characteristic of the invention, the aforementioned portion, i.e. the contact surface 39 or 73, preferably extends in such a manner that the distance between the upper edge 16 of the panel to the contact surface 39, 73 diminishes between the proximal and distal ends of the sloping contact surface 39, 73, in other words, such that, as represented in FIG. 22, the distance X2 is smaller than the distance X1. This is also the case in FIG. 7.

Still preferably, this portion only starts at a clear distance E1 from the outer edge of upper lip 42.

It is obvious that the coupling parts 22 to 25 can also be shaped by means of said milling process.

According to a particular characteristic of the invention, the floor panels 1 are treated at their sides 2–3 and/or 26–27 with a surface densifying agent, more particularly a surface hardening agent, which preferably is chosen from the following series of products: impregnation agents, pore-scaling agents, lacquers, resins, oils, paraffins and the like.

In FIG. 22, such impregnation 88 is represented schematically. This treatment can be performed over the complete surface of the sides 2–3 and/or 26–27 or only over specific portions hereof, for example exclusively on the surfaces of the tongue 9 and the groove 10.

The treatment with a surface densifying agent offers, in combination with the snap-together effect, the advantage that in various aspects better coupling characteristics are obtained. As a result of this, the coupling parts 4–5 and/or 28–29 better keep their shape and strength, even if the floor panels 1 are engaged and disassembled repeatedly. In particular, if the core 8 is made of HDF, MDF or similar materials, by means of this treatment a better quality of surface condition is obtained, such that no abrasion of material occurs during engaging, or during disassembling.

This treatment also offers the advantage that, at least in the case of a surface hardening, the aforementioned elastic tensioning effect is enhanced.

The present invention is in no way limited to the forms of embodiment described by way of example and represented in the figures, however, such floor covering and the pertaining floor panels 1 can be embodied in various forms and dimensions without departing from the scope of the invention.

For example, the various characteristics which are described by means of the represented embodiments or examples may be selectively combined with each other.

Furthermore, all embodiments of coupling elements described before can be applied at the longer side as well as at the shorter side of a panel.

What is claimed is:

1. A floor covering panel comprising a substantially planar under side and at least two opposed side edges;

said side edges including cooperative coupling parts configured to cooperate with identical cooperative complementary coupling parts of another one of said panel;

said coupling parts comprising substantially a tongue and a groove extending distally transversely along panel side edges including mechanical locking elements;

said tongue, groove and locking elements formed in one piece with the panel;

said tongue groove and locking elements cooperating to prevent drifting apart of the floor panel when coupled by said coupling parts to another one of said floor panel in directions perpendicular to the adjacent side edges of the coupled panels, and parallel to the undersides of the coupled panels;

a coupling part of said panel, when engaged with a cooperating coupling part of another one of said panel, urging the coupled panels towards each other;

at least one of said coupling parts including an elastically bendable portion having a relaxed unbent position, and which, when in a coupled condition, is at least slightly bent out of its normal relaxed unbent position to effect said urging of the coupled panels together.

2. The floor covering panel according to claim 1, wherein the elastically bendable portion of said one of said coupling parts comprises a lower lip defining at least in part a lower side of the groove of said coupling parts, said lower lip cooperating with a mating portion of a tongue of a cooperating coupling part when the cooperating parts are coupled.

3. The floor covering panel according to claim 2, wherein said lip when elastically bent extends in a downward direction relative to the panel underside when the panel is coupled by said coupling parts to another one of said panel.

4. The floor covering panel according to claim 3, wherein the panel comprises a core comprising a material selected from the group consisting of HDF and MDF;

a lower lip of a coupling parts is substantially formed of said core; one of said locking elements comprises a recess in said lower lip, said recess having a lowermost bottom area;

said groove of said coupling parts having a deepest point within the panel; and

wherein said elastically bendable portion of the lower lip comprises a portion of said lower lip located between the deepest point of said groove and the lowermost bottom area of said recess.

5. The floor covering panel according to claim 4, wherein a portion of the lower lip that is elastically bendable includes a side wall area of said recess that slopes downwardly in a direction extending from a distally outer area of said lip towards a proximally inner area of said lip.

6. The floor covering according to any one of claims 1 to 5, wherein upon coupling the coupled panels are urged together without play.

*   *   *   *   *

# EXHIBIT  B

US006928779B2

## (12) United States Patent
Moriau et al.

(10) Patent No.: **US 6,928,779 B2**
(45) Date of Patent: **Aug. 16, 2005**

(54) **FLOOR PANELS WITH EDGE CONNECTORS**

(75) Inventors: **Stefan Simon Gustaaf Moriau**, Ghent (BE); **Mark Gaston Maurits Cappelle**, Staden (BE); **Bernard Paul Joseph Thiers**, Oostrozebeke (BE)

(73) Assignee: **Unilin Beheer BV, Besloten Vennootschap**, Ijssel (NL)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 108 days.

(21) Appl. No.: **10/265,657**

(22) Filed: **Oct. 8, 2002**

(65) **Prior Publication Data**

US 2003/0029115 A1 Feb. 13, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/471,014, filed on Dec. 23, 1999, now Pat. No. 6,490,836, which is a continuation of application No. 08/872,044, filed on Jun. 10, 1997, now Pat. No. 6,006,486.

(30) **Foreign Application Priority Data**

Jun. 11, 1996 (BE) ........................................ 09600527
Apr. 15, 1997 (BE) ........................................ 09700344

(51) Int. Cl.⁷ ............................................. E04F 15/22
(52) U.S. Cl. .................... **52/403.1**; 52/480; 52/506.05; 52/506.1; 52/582.1; 52/592.2; 52/551
(58) Field of Search ............................... 52/403.1, 480, 52/506.1, 506.05, 582.1, 592.2, 551

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 753,791 A | 3/1904 | Fulghum |
| 1,124,228 A | 1/1915 | Houston |
| 1,986,739 A | 1/1935 | Mitte |
| 1,988,201 A | 1/1935 | Hall |
| 2,276,071 A | 3/1942 | Scull |
| 2,430,200 A | 11/1947 | Wilson |
| 2,740,167 A | 4/1956 | Rowley |
| 3,045,294 A | 7/1962 | Livezey, Jr. |
| 3,267,630 A | 8/1966 | Omholt |
| 3,310,919 A | 3/1967 | Bue et al. |
| 3,387,422 A | 6/1968 | Wanzer |
| 3,526,420 A | 9/1970 | Brancaleone |
| 3,538,665 A | 11/1970 | Gall |
| 3,694,983 A | 10/1972 | Couquet |
| 3,731,445 A | 5/1973 | Hoffmann et al. |
| 3,759,007 A | 9/1973 | Thiele |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | A 13098/83 | 10/1983 |
| BE | 417526 | 9/1936 |

(Continued)

OTHER PUBLICATIONS

Akzenta Brief (Arguments) in Support of Intervention in Opposition Against Unilin European Patent Application No. 00201515.4 (Including Partial Translation of Document E2 Cited Therein) (Oct. 10, 2001).

(Continued)

*Primary Examiner*—Carl D. Friedman
*Assistant Examiner*—Yvonne M. Horton
(74) *Attorney, Agent, or Firm*—Bacon & Thomas, PLLC

(57) **ABSTRACT**

Floor covering, including hard floor panels which, at least at the edges of two opposite sides, are provided with coupling parts, cooperating which each other, substantially in the form of a tongue and a groove, wherein the coupling parts are provided with integrated mechanical locking elements which prevent the drifting apart of two coupled floor panels in a direction (R) perpendicular to the related edges and parallel to the underside of the coupled floor panels, and provide a snap-action coupling.

**29 Claims, 10 Drawing Sheets**



## US 6,928,779 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,859,000 | A | 1/1975 | Webster |
| 4,164,832 | A | 8/1979 | Van Zandt |
| 4,169,688 | A | 10/1979 | Toshio |
| 4,426,820 | A | 1/1984 | Terbrack et al. |
| 4,501,102 | A | 2/1985 | Knowles |
| 4,641,469 | A | 2/1987 | Wood |
| 4,738,071 | A | 4/1988 | Ezard |
| 4,769,963 | A | 9/1988 | Meyerson |
| 4,819,932 | A | 4/1989 | Trotter |
| 5,029,425 | A | 7/1991 | Bogataj |
| 5,179,812 | A | 1/1993 | Hill |
| 5,216,861 | A | 6/1993 | Meyerson |
| 5,295,341 | A | 3/1994 | Kajiwara |
| 5,349,796 | A | 9/1994 | Meyerson |
| 5,502,939 | A | 4/1996 | Zadok et al. |
| 5,630,304 | A | 5/1997 | Austin |
| 5,706,621 | A | 1/1998 | Pervan |
| 5,768,850 | A | 6/1998 | Chen |
| 5,797,175 | A | 8/1998 | Schneider |
| 5,797,237 | A | 8/1998 | Finhell, Jr. |
| 5,860,267 | A | 1/1999 | Pervan |
| 6,023,907 | A | 2/2000 | Pervan |
| 6,182,410 | B1 | 2/2001 | Pervan |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| BE | 557844 | 5/1957 |
| CA | 991373 | 6/1976 |
| CH | 200949 | 11/1938 |
| CH | 211877 | 10/1940 |
| CH | 562 377 | 4/1975 |
| DE | 1212275 | 3/1966 |
| DE | 1 534 802 | 4/1970 |
| DE | 7102476 | 1/1971 |
| DE | 1534278 | 11/1971 |
| DE | 2238600 | 2/1974 |
| DE | 7402354 | 5/1974 |
| DE | 2502992 | 7/1976 |
| DE | 2616077 | 10/1977 |
| DE | 2917025 | 11/1980 |
| DE | 3041781 | 6/1982 |
| DE | 3246376 | 6/1984 |
| DE | 3343601 | 6/1985 |
| DE | 8604004 | 6/1986 |
| DE | 3512204 | 10/1986 |
| DE | 3544845 | 6/1987 |
| DE | 4215273 | 11/1993 |
| DE | 4242530 | 6/1994 |
| EP | 0248127 | 12/1987 |
| EP | 0 667 936 | B2 | 7/2000 |
| FR | GB424057 | 2/1935 |
| FR | 1293043 | 11/1962 |
| FR | 2568295 | 1/1986 |
| FR | 2630149 | 10/1989 |
| FR | 2675174 | 10/1992 |
| FR | 2691491 | 11/1993 |
| FR | 2697275 | 4/1994 |
| GB | 1127915 | 9/1968 |
| GB | 1237744 | 6/1971 |
| GB | 1275511 | 5/1972 |
| GB | 1430423 | 3/1976 |
| GB | 2117813 | 10/1983 |
| GB | 2243381 | 10/1991 |
| GB | 2256023 | 11/1992 |
| JP | 54-65528 | 5/1979 |
| JP | 57-119056 | 7/1982 |
| JP | 3-169967 | 7/1991 |
| JP | 5-148984 | 6/1993 |
| JP | 6-146553 | 5/1994 |
| JP | 6-200611 | 7/1994 |
| JP | 6-56310 | 8/1994 |
| JP | 6-320510 | 11/1994 |
| JP | 7-076923 | 3/1995 |
| JP | 07180333 | 7/1995 |
| JP | 7-300979 | 11/1995 |
| JP | 7-310426 | 11/1995 |
| JP | 8-109734 | 4/1996 |
| JP | 8-270193 | 11/1996 |
| NL | 76 01773 | 8/1976 |
| SE | 372081 | 12/1974 |
| SE | 450141 | 5/1987 |
| SE | 501014 | 10/1994 |
| SE | 502994 | 3/1996 |
| WO | WO 84/02155 | 6/1984 |
| WO | WO 93/13280 | 7/1993 |
| WO | WO 94/01628 | 1/1994 |
| WO | WO 94/01688 | 1/1994 |
| WO | WO 94/26999 | 11/1994 |
| WO | WO 96/27719 | 9/1996 |
| WO | WO 96/27721 | 9/1996 |

### OTHER PUBLICATIONS

EPP Floor Products Opposition Against Unilin European Patent No. EP 0 843 763 (Oct. 27, 2000).

Hornitex–Werke Opposition to Unilin European Patent No. EP 0 843 763 (Jul. 4, 2001).

Kronospan Action to Nullify Unilin German Utility Model Patent No. 297 24 428 U1, including Cited Documents E2 (with Partial Translation); E3; E5 and E6 (with Translation) (Aug. 9, 2001).

Kronospan Opposition Against Unilin European Patent No. 0 843 763 (Jul. 14, 2001).

Kronotex Arguments in Appeal from Decision of Germany Patent Court Upholding of Unilin German Utility Model Patent No. DE–UM 29 710 175 (Jul 17, 2000).

Kronotex Arguments filed before Federal Patent Court in Appeal from Adverse Decision of German Patent Office Upholding Validity on Unilin German Utility Model Patent No. DE–UM 297 10 175 (Jul. 24, 2001).

Kronotex Opposition Against Unilin Australian Patent Application No. 713,628 AU–B (32569/97) (Sep. 1, 2000).

Kronotex Opposition Against Unilin European Patent No. EP 0 843 763 (Jun. 29, 2001).

Observations by Third Party (Kandl) Regarding Patentability of Unilin European Patent Application No. 00201515.4 (including Partial Translation of Document E2 Cited Therein) (Oct. 10, 2001).

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Oct. 18, 2001.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Dec. 18, 2001.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 14, 2002.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 24, 2002.

"Selbst Teppichböden, PVC und Parkett verlegen", 1985 Compact Verlag München.

Valinge Aluminum Observations Regarding Unilin European Patent No. EP 0 83 763 (Nov. 19, 1998).

Valinge Aluminum Opposition Against Unilin Australia Patent Application No. 713 628 (AU–B 325 60/97) (Jun. 6, 2000).

## US 6,928,779 B2

Page 3

Valinge Aluminum Opposition Against Unilin New Zealand Patent 3,29,581 (Jun. 2001).

Valinge Aluminum Opposition Against Unilin European Patent No. EP 0 843 763 with Copies of Cited Documents (Aug. 6, 2001).

*Webster's Dictionary*, definition of "scarf", p. 862, 1992, PAMCO Publ. Comp. Inc. (N.Y.).

"Decision of Opposition Division of European Patent Office regarding EP 1 024 234 of Unilin Beheer N.V., mailed Jul. 18, 2004."



*Fig.1*



*Fig.8*





Fig.5

Fig.6

Fig.7



*Fig.9*

*Fig.10*

*Fig.11*



*Fig. 12*

*Fig. 13*



*Fig.14*



*Fig.15*



*Fig.16*



*Fig.17*

*Fig.18*

*Fig.19*



*Fig.20*



*Fig.21*



Fig.22

Fig.23



*Fig. 24*



*Fig. 25*

US 6,928,779 B2

1

# FLOOR PANELS WITH EDGE CONNECTORS

## RELATED APPLICATION DATA

This application is a continuation of pending application Ser. No. 09/471,014, filed Dec. 23, 1999, now U.S. Pat. No. 6,490,836; which is a continuation of application Ser. No. 08/872,044 filed Jun. 10, 1997, now U.S. Pat. No. 6,006,486.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to floor panels.

2. Related Technology

In the first instance, the invention is intended for so-called laminated floors, but generally it can also be applied for other kinds of floor covering, consisting of hard floor panels, such as veneer parquet, prefabricated parquet, or other floor panels which can be compared to laminated flooring.

It is known that such floor panels can be applied in various ways.

According to a first possibility, the floor panels are attached at the underlying floor, either by glueing or by nailing them on. This technique has a disadvantage that is rather complicated and that subsequent changes can only be made by breaking out the floor panels.

According to a second possibility, the floor panels are installed loosely onto the subflooring, whereby the floor panels mutually match into each other by means of a tongue and groove coupling, whereby mostly they are glued together in the tongue and groove, too. The floor obtained in this manner, also called a floating parquet flooring, has as an advantage that it is easy to install and that the complete floor surface can move which often is convenient in order to receive possible expansion and shrinkage phenomena.

A disadvantage with a floor covering of the above-mentioned type, above all, if the floor panels are installed loosely onto the subflooring, consists in that during the expansion of the floor and its subsequent shrinkage, the floor panels themselves can drift apart, as a result of which undesired gaps can be formed, for example, if the glue connection breaks.

In order to remedy this disadvantage, techniques have already been through of whereby connection elements made of metal are provided between the single floor panels in order to keep them together. Such connection elements, however, are rather expensive to make and, furthermore, their provision or the installation thereof is a time-consuming occupation.

Examples of embodiments which apply such metal connection elements are described, among others, in the documents WO 94/26999 and WO 93/13280.

Furthermore, couplings are known which allow coupling parts to snap fit into each other, e.g., from the documents WO 94/1628, WO 96/27719 and WO 96/27721. The snapping-together effect obtained with these forms of embodiment, however, does not guarantee a 100-percent optimum counteraction against the development of gaps between the floor panels, more particularly, because in fact well-defined plays have to be provided in order to be sure that the snapping-together is possible.

From GB 424.057, a coupling for parquetry parts is known which, in consideration of the nature of the coupling, only is appropriate for massive wooden parquetry.

Furthermore, there are also couplings for panels known from the documents GB 2.117.813, GB 2,256,023 and DE

2

3.544.845. These couplings, however, are not appropriate for connecting floor panels.

## BRIEF SUMMARY OF THE INVENTION

The invention aims at an improved floor covering of the aforementioned type, the floor panels of which can be coupled to each other in an optimum manner and/or the floor panels of which can be manufactured in a smooth manner, and whereby preferably one or more of the aforementioned disadvantages are excluded.

The invention also aims at a floor covering which has the advantage that no mistakes during installing, such as gaps and such, can be created.

Furthermore, the invention also aims at a floor covering, whereby the subsequent development of gaps is excluded or at least counteracted in an optimum manner, whereby also the possibility of the penetration of dirt and humidity is minimized.

To this aim, the invention relates to a floor covering, consisting of hard floor panels which, at least at the edges of the two opposite sides, are provided with coupling parts, cooperating which each other, substantially in the form of a tongue and a groove, wherein the coupling parts are provided with integrated mechanical locking elements which prevent the drifting apart of two coupled floor panels into a direction perpendicular to the related edges and parallel to the underside of the coupled floor panels. Hereby, these coupling parts are optimalized in such a manner that they allow that any form of play is counteracted and preferably is excluded.

By integrated mechanical locking elements is understood that these form a fixed part of the floor panels, either by being connected in a fixed manner to the floor panels, or by being formed in one piece therewith.

In a first important preferred form of embodiment, the coupling parts are provided with locking elements which, in the engaged position of two or more of such floor panels, exert a tension force upon each other which force the floor panels towards each other. As a result of this that not only the formation of gaps counteracted during installation, but also in a later stage the development of gaps, from any causes whatsoever, is counteracted.

According to another characteristic of the intention, the coupling parts, hereby are formed in one piece with the core of the floor panels.

According to a second important preferred embodiment, the aforementioned optimalization is achieved in that the floor covering panel possesses the following combination of characteristics: the coupling parts and locking elements are formed in one piece with the core of the floor panels; the coupling parts have such a shape that two subsequent floor panels can be engaged into each other exclusively by snapping together and/or turning, whereby each subsequent floor panel can be inserted laterally into the previous; the coupling parts are interlocked free from play in all directions in a plane extending perpendicular to the aforementioned edges; the possible difference between the upper and lower lip of the lips which border the aforementioned grooves, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove, is smaller than one time the total of the thickness of the panel; the total thickness of each related floor panel is larger than or equal to 5 mm; and that the basic material of the floor panels, of which the aforementioned core and locking elements are formed, consists of a ground product which, by means of a binding agent or by means of melting together, is made into

US 6,928,779 B2

| 3 | 4 |

a unitary composite, and/or of a product on the basis of synthetic material and/or of a chip board with fine chips.

Due to the fact that the coupling parts provide for an interlocking free from play, as well as due to the fact that these coupling parts are manufactured in one piece, from the basic material of the floor panels, a perfect connection between adjacent floor panels can always be guaranteed, even with repeated expansion and shrinkage of the floor surface.

This combination of characteristics can be combined or not with the aforementioned characteristic that the locking elements exert a tension force upon each other when panels are joined together.

According to a third important preferred embodiment, the characteristics of which may or may not be combined with the characteristics of the embodiments described above, the floor covering is characterized in that the lower lip which limits or defines the lower side of the groove, extends beyond the upper lip in the plane of the panel; the locking elements are formed at least of a contact portion which inwardly slopes downward; and that this portion, at least partially, is located in the portion of the lower lip which extends beyond the upper lip. The advantages of these features will appear from the further description.

According to a preferred form of embodiment, the floor panels are configured as elongated panels and the coupling parts described above are applied along the longitudinal sides of these panels.

According to a particular form of embodiment, coupling parts are provided at the other two sides, too, either of another construction than described above or not.

In the most preferred form of embodiment, for the basic material use shall be made of the aforementioned product, which, as said, is ground and, by means of a binding agent, made into a unitary composite material. More particularly, for the core use shall be made of finely-ground wood which preferably is glued, more particularly, moisture resistant glued. Still more particularly, for the core use shall be made of so-called HDF board (High Density Fibreboard) or MDF board (Medium Density Fibreboard) which is highly compressed ground wood particles (fibers) and binder material. Hereinafter, the wood component of the core material shall be referred to as "wood product".

The fact that the invention is applied to floor panels the basic material of which consists of the material described above, offers the advantage that with the processing of this material, very smooth surfaces are obtained whereby very precise couplings can be realized, which, in first instance, is important in the case of a snap-together connection and/or turning connection free from play. Also, very special forms of coupling parts can be manufactured in a very simple manner because the aforementioned kinds of material can be processed particularly easy.

The surfaces obtained with HDF and MDF also have the advantage that the floor panels mutually can be shifted readily alongside each other in interlocked condition, even when engaged with a tensioning force.

The applicants also discovered that the aforementioned materials, in particular HDF and MDF, show ideal features in order to realize a connection, such as mentioned above, as these material show the right features in respect to elastic deformation in order to, on the one hand, realize a snap-together effect, and, on the other hand, receive expansion and shrinkage forces in an elastic manner, whereby it is avoided that the floor panels come unlocked or are damaged in an irreparable manner.

In the case that for the core use is made of a material based on synthetic material, to this end solid synthetic material can be used as well as a mixture of synthetic materials, eventually composed of recycled materials.

The floor covering preferably is formed by joining the floor panels into each other free of glue. Hereby, the connections are of such nature that the floor panels can be disassembled without being damaged, such that, for example, when moving from one residence or location to another, they can be taken along in order to be placed down again. It is, however, clear that a glueing between tongue and groove is not excluded.

The invention, of course, also relates to floor panels which allow the realization of the aforementioned floor covering.

The invention also relates to a method for the manufacturing of the aforementioned floor panels with which the advantage that the tongues and/or grooves, including the corresponding locking means, can be provided at the floor panels at high production speeds without problems. More particularly, it aims at a method which allows that the rather complicated forms of the tongue and the groove of the aforementioned floor panels can be formed completely by means of milling cutters, the diameter of which can be chosen independent of the form to be realized, such that the use of small milling cutters, for example finger cutters, with diameters smaller than the depth of the tongue or groove can be excluded.

In accordance with this method the tongue and/or groove is formed by means of a milling process using at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in respect to the related floor panel. During each of the aforementioned milling cycles, preferably substantially the final form of one flank, either of the tongue or of the groove, is formed.

For the aforementioned two milling cycles, thus, milling cutters are used which extend outside the groove, respectively the tongue. More particularly the diameters of these milling cutters shall at least be 5 times and even better 20 times larger than the thickness of the floor panels.

The use of milling cutters having the aforementioned diameters has as an advantage that the normal production speeds can be maintained which are also applied during milling of a classical straight tongue and groove. There is also the advantage obtained that the installation of such milling cutters induce only minor or no additional costs because such milling cutters can be placed directly upon a motor shaft and/or the conventional machines can be used.

BRIEF DESCRIPTION OF THE DRAWINGS

With the intention of better showing the characteristics according to the invention, in the following, as an example without any limitative character, several preferred forms of embodiment are described, with reference to the accompanying drawings, wherein:

FIG. 1 represents a floor panel of a floor covering according to the invention;

FIG. 2, on a larger scale, represents a cross-section according to line II—II in FIG. 1;

FIGS. 3 and 4 represent how two floor panels with coupling parts according to FIG. 2 match into each other;

FIG. 5, on a larger scale, represents a cross-section according to line V—V in FIG. 1;

FIGS. 6 and 7 represent how two floor panels with coupling parts according to FIG. 5 match into each other;

FIGS. 8 to 11 represent a number of variants of coupling parts of floor panels according to the invention;

US 6,928,779 B2

5

FIG. 12 schematically represents how the floor parts can be provided with coupling parts;

FIG. 13 represents a cross-section according to line XIII—XIII in FIG. 12;

FIGS. 14 to 21, on a larger scale and in cross-section, represent the penetration of the milling cutters which are indicated in FIG. 12 with arrows F14 to F21;

FIG. 22 represents a floor panel according to the invention;

FIG. 23, on a larger scale, represents the coupling of two floor panels of FIG. 22;

FIGS. 24 and 25 represent two manners of coupling floor panels according to FIG. 22 to each other.

DETAILED DESCRIPTION

The invention relates to a floor covering which is composed of hard floor panels 1, for example, such as a laminated panel as shown in FIG. 1.

These floor panels 1 can be of various shape, for example, rectangular or square, or of any other shape.

In the most preferred form of embodiment, they shall be manufactured in an elongated form, such as shown in FIG. 1, for example, with a length of 1 to 2 meters. The thickness, however, can also vary, but is preferably 0.5 to 1.5 cm, and more particularly 0.8 cm.

Each floor panel 1 is, at least at the edges of two opposite sides 2–3, provided with coupling parts 4–5 which permit two adjacent identical floor panels 1 to be coupled to each other.

According to the invention, the coupling parts 4–5, as represented in the FIGS. 2 to 4, are provided with integrated mechanical locking parts or locking elements 6 which prevent the drifting or sliding apart of two coupled floor panels 1 in a direction D perpendicular to the respective sides 2–3 and parallel to the underside 7 of the coupled floor panels 1; the coupling parts 4–5 and the locking elements 6 are formed in one piece with the core 8 of the floor panels 1; the coupling parts 4–5 have such a shape that two subsequent floor panels 1 can be engaged into each other solely by snapping-together and/or turning after the coupling parts are partially engaged, whereby each subsequent floor panel 1 can be laterally inserted into the previous; and the coupling parts 4–5 preferably are interlocked free from play in all directions in a plane which is located perpendicular to the aforementioned edges.

In the case of floor panels 1 with an elongated shape, as represented in FIG. 1, the respective coupling parts 4–5 are located at the longitudinal sides 2–3.

The coupling parts 4–5 can be realized in various forms, although the basic forms thereof will always be formed by a tongue 9 and a groove 10.

In the form of embodiment of FIGS. 2 to 4, the related floor panel 1 is provided with coupling parts 4–5 and locking means or locking elements 6 which allow two floor panels 1 to be mutually engaged by means of a turning movement, without the occurrence of any snap-together effect.

In the represented example, the locking elements 6 consist of a first locking element 11, formed by a protrusion with a bent round shape at the lower side 12 of the tongue 9, and a second locking element 13 (shown in FIG. 2), formed by a recess with a bent hollow or downwardly concave shape in the lower wall 14 of the groove 10.

The locking elements 11–13 ensure that two floor panels 1 which are coupled to each other can not move laterally in the horizontal plane with respect to each other.

6

In order to enable two floor panels 1 to be inserted into each other by means of a turning movement, the curvatures preferably are circular. The bottom side 12 of locking means or locking elements 6 has a curvature with a radius R1, the center of which coincides with the respective upper edge 15 of the floor panel 1, whereas the lower wall 14 of the locking part 5 has a curvature with a radius R2 which is equal to the radius R1, but its center coincides with the respective upper edge 16. Radii R1 and R2 may also be applied which are larger or smaller than the distance to the upper edge 15, 16 respectively, and/or which differ from each other in size.

The upper side 17 of the tongue 9 and the upper wall or side 18 of the groove 10 are preferably flat and preferably are located in the horizontal plane.

The inner side 20 of the groove 10 and the front side 19 of the tongue 9 of the two interlocked floor panels 1 preferably do not fit closely against each other, such that an intermediate space or clearance 21 is created between them into which possible dust remainders or such can be pushed away by means of the tongue 9.

The tongue 9 and the groove 10 preferably have shapes which are complementary to each other, such that the tongue 9 in the engaged condition of two identical floor panels 1 precisely sits against the upper wall 18 and the lower wall 14 of the groove 10, whereby a pressure P, exerted against the upper lip 22, is received or reacted not only by this lip 22, but by the complete structure, because this pressure can be transmitted through the tongue 9 and the lower lip 23 to cause the panels to be urged towards each other.

It is, however, clear that a number of minor deviations to these complementary forms can occur which, anyhow, have no or almost no effect upon th receipt and transmission of pressure forces. For example, a chamfer 24 on lip 22 and a recess or clearance 25 can be provided, as represented in FIGS. 2 to 4, as a result of which the subsequent floor panels 1 can easily be pushed and guided into each other, such that no possible ridges in the subflooring or such render good insertion difficult. The recess 25 defines a chamber 25' (FIG. 4) when the floor panels are coupled, the chamber 25 created between the tongue 9 and the upper edges 15, 16. The upper lip 22 of edge 3 engages the opposing panel edge 2 below upper edge 15 along a contact surface that is perpendicular to the plane of the coupled panels, as shown.

As represented in the FIGS. 5 to 7, the floor panels 1 according to the invention can also, along the sides 26–27 which are at a right angle to the sides 2–3, be provided with coupling parts 28–29 which have locking elements 30, too. The coupling parts 28–29 are preferably also realized in the shape of a tongue 31 and a groove 32. Hereby, the locking elements 30 do not have to be of the same nature as the locking elements 6.

Preferably, at the sides 26–27 locking elements are provided which allow for an engagement and interlocking by means of a lateral translation movement in direction T only, as represented in FIGS. 6 and 7. To this aim, the locking elements 30 consist of a snap-together connection with locking elements 33 and 34 which grip behind each other.

As represented in FIGS. 5 to 7, the locking element 33 preferably consists of a protrusion of the lower side 35 of the tongue 31 which can be located in a recess 36 in a lower lip 43 extending distally from the lower wall 37 of the groove 32. The locking element 34 is formed by the upward directed part or protrusion which defines the distally outer end of recess 36.

In this case, the locking elements 33–34 have contact surfaces 38–39 which are parallel to each other and prefer-

7

ably extend in an inclined manner, according to a direction which simplifies the snapping-together of the panels. The common plane of tangency L which is determined by the common tangent at the meeting point or area of surfaces 38–39, hereby forms an angle A sloping inwardly and downwardly from an outer region to an inner region relative to the underside 7, which angle is smaller than 90°.

The locking elements 33–34 preferably are provided with inclined portions 40 and 41 which, when two floor panels 1 are engaged, cooperate with each other in such a manner that the locking elements 33–34 can easily be pushed over each other until they grip behind each other by means of a snap-together effect (FIGS. 6 and 7).

The thickness W1 of the tongue 31 preferably is equal to the width W2 of the groove 32, such that compression pressure P applied to the upper lip 42 is reacted by the tongue 31 which, in its turn, then is reacted by the lower lip 43.

Analogous to the chamfer 24 and recess 25, a recess or clearance 44 and a chamfer 45 are provided also at the edges 28–29.

It is noted that such a snap-together coupling can also be applied at the edges 2–3. Hereby, this can be a snap-together coupling analogous to these of FIGS. 5 to 7, but this can also be a snap-together coupling using other forms of coupling configurations, for example, such as represented in FIGS. 8 and 9. Contrary to the locking elements 33–34 which consist of rather local protrusions, in the forms of embodiment of FIGS. 8 and 9 use is made of locking elements 46–47 which, in comparison to the total width B of the coupling, extend over a rather large distance.

In this case, the locking elements 46–47 are also provided at the lower side 12 of the tongue 9 and the lower wall 14 of the groove 10.

According to FIG. 8, the locking elements 46–47 have contact surfaces 48–49 which are at a vertical angle with the plane of the floor panel 1. In this manner, a coupling is obtained which is interlocked in a particularly fixed manner.

As represented in FIG. 9, the locking elements 46–47 possibly can be configured in such a manner that substantially only a linear contact is obtained, for example, because the contact surfaces directed towards each other are formed with different curvatures.

The contact surfaces 48', 49', directed towards each other, of the locking elements 46–47 in this embodiment consist of curved surfaces. The common plane of tangency L forms an angle A which is smaller than 90°, and more preferably is smaller than 70°.

In this manner, the locking element 46 preferably has two portions with a different curvature, on one hand, a portion 50 with a strong curvature and, on the other hand, a portion 51 with a weak curvature. The portion 50 with the strong curvature provides for the formation of a firm coupling. The portion 51 with the weak curvature facilitates the coupling parts 4–5 to be brought into each other easily. The intermediate space S forms a chamber which offers space for dust and the like which, when engaging two floor panes 1, inevitably infiltrates there. The chamber at intermediate space S, the chamber 25' defined by recess 44, and clearance 21 are or may be essentially independent clearances or chambers when the tongue and groove elements are coupled, as illustrated. It will be noted that the tongue 9 in FIGS. 9 and 10 has a cross-sectional periphery that defines the outer shape of the tongue in transverse cross-section. As illustrated, the tongue 9 includes an upper surface 9a, a lower surface 9b and a distalmost surface 9c, the outer form

8

or profile of the tongue along and connecting these surfaces constituting a tongue periphery that includes an upper tongue contact surface 9d that engages an upper groove or lip contact surface 22a when panels are coupled as seen in FIG. 9 and a lower contact surface 48' engaging the lower groove or lip contact surface 49' intersecting the common plane of tangency L in this example.

As seen in FIGS. 5, 6 and 7, an intermediate lower tongue contact surface 31a engages intermediate lower groove, or lip contact surface 32a when the tongue 31 and groove 32 are coupled together. The intermediate contact surfaces are located along the periphery of tongue 31 and the surface of groove 32 between lower contact surfaces 38, 39 and upper contact surfaces 85, 86 between the tongue and groove elements.

In the case of a snap-together connection, for example, a connection such as represented in FIGS. 7 to 9, preferably the tongue 9–31 has a shape that thickens from below, which then can cooperate with a widened portion in the groove 10.

In FIG. 10, a variant is represented whereby at least at the level of the upper edges 15–16, a sealing material 52 is provided, as a result of which a watertight sealing can be assured. This sealing material 52 may consist of a strip or covering which is provided previously at the floor panel 1, either at one or both upperside edges 15–16.

In FIG. 11, a further variant is represented, whereby the locking element 6 is formed by an upward directed portion 53 at the tongue 9, which as a result of a turning movement of the panel, is brought behind a downward-directed portion 54 on the upper wall 18. More particularly, this is obtained by forming the upper side 17 and the upper wall 18 with a curvature R3, the center of which is situated at the upperside edges 15–16, and forming the lower side 12 and the lower wall 14 with a radius R4, the center of which is also situated at the upperside edges 15 and 16, respectively. These radii R3–R4 can be chosen otherwise, too.

In general, according to the invention, the difference between, on one hand, the radius R1, R3 respectively, and, on the other hand, the radius R2, R4 respectively, preferably should not be larger than 2 mm.

It is also preferred that the center of these radii be situated inside the circle C1, C2 (see FIG. 2) respectively, which extends with a radius R5 of 3 mm centered at upperside edge 15,16 respectively.

Finally it is noted that, according to the invention, the lower lip 23–43, as represented in FIGS. 2 to 7, can be formed distally longer than the upper lip 22–42. This has an advantage that the coupling parts 4–5–28–29 can be shaped in an easier manner by means of a milling cutter or the like. Furthermore, this simplifies the engagement of two floor panels 1, because each subsequent floor panel 1 during installation can be placed upon the protruding lower lip 23–43, as a result of which the tongue 9–31 and the groove 10–32 automatically are positioned in front of each other.

The embodiments wherein the lower lip 23 of the groove element is equal to or distally shorter than the upper lip 22, in their turn, offer the advantage that no protruding lip 23 remains at the extreme edge of the floor which might cause problems in finishing the floor installation.

In order to allow for a smooth assembly, to guarantee the necessary stability and firmness and in order to limit the quantity of material to be cut away, the difference E between the distally outer edge of the upper lip 22–42 and the distally outer edge of the lower lip 23–43, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove 10, should preferably be kept smaller than

US 6,928,779 B2

9

one time the total thickness F of the floor panel **1**. For stability's sake, normally this total thickness F shall never be less than 5 mm.

The small dimension of the difference E offers the advantage that the lower lip need not be strengthened by a reinforcement strip or the like.

According to a particular form of embodiment, the central line M1 through the tongue **9** and the groove **10** is situated lower than the center line M2 of the floor panel **1**, such, that the upper lip **22**–**42** is thicker than the lower lip **23**–**43**. In first instance, this is essential in this kind of connection, because then it is the lower lip **23**–**43** which bends, whereby the upper side of the floor panel **1** is kept free of possible deformations.

As explained in the introduction, for the core **8** a material is chosen from the following series:

  a. a ground product which, by means of a binding agent or by means of melting together is made into a unitary composite material;

  a product based on synthetic material;

  chip board with fine chips.

The invention shows its usefulness, in first instance, preferably with laminated flooring, due to the reasons explained in the introduction.

As represented in the examples of the FIGS. 2 to **11**, such laminated flooring preferably consists of a core **8** made of MDF medium density fiberboard board, HDF high density fiberboard board or similar, whereby at least at the upper side of this core **8** one or more layers of material are provided.

More particularly, it is preferred that the laminated flooring is provided with a decorative layer **55** and a protective top layer **56**. The decorative layer **55** is a layer, impregnated with resin, for example, made of paper, which can be imprinted with a variety of patterns, such as a wood pattern, a pattern in the form of stone, cork, or similar or even with a fancy pattern. The protective top layer **56** preferably also consists of a layer saturated with resin, for example, melamine resin, which in the final product is transparent.

It is clear that still other layers can be applied, such as an intermediate layer **57** upon which the decorative layer **55** is provided.

Preferably, also a backing layer **58** shall be applied at the underside **7**, forming a counterbalancing element for the top layers and, thus, guaranteeing the stability of the form of the floor panel **1**. This backing layer **58** may consist of a material, for example melamine paper, impregnated with a resin, for example, a melamine resin.

As represented schematically in FIG. **12**, the tongue **9** and the groove **10**, and preferably also the tongue **31** and the groove **32** are formed by means of a milling process. In the case that a profile has to be applied on all four sides, the floor panels **1** preferably shall be displaced by means of two sequential perpendicular movements V1 and V2, whereby during the first movement profiles at two opposite edges are provided, in this case the longitudinal edges, by means of milling devices **59**–**60**, whereas during the second movement profiles are provided at the other edges, in this case the small edges, by means of milling devices **61**–**62**. During these processing, the floor panels **1** preferably are put with their decorative layer directed downward.

According to an important characteristic of the invention, each respective tongue **9 31** and groove **10 32** are formed by means of a milling process with at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in reference to the related floor panel **1**.

10

This is illustrated in FIGS. 13, 14 and 15, wherein it is represented how a groove **10** is realized by means of two milling cycles by means of two milling cutters **63** and **64**. FIGS. 16 and 17 represent how the cross section periphery of tongue **9** is shaped by means of milling cutters **65** and **66**.

The FIGS. 18–19 and 20–21 represent similar views showing how the groove **32** and the cross-section periphery of tongue **31** are shaped by means of milling cutters **67**–**68** and **69**–**70**, positioned at angle.

During each of the aforementioned milling passes, substantially the final shape of one flank is fully realized. For example, the milling cutter **63** of FIG. 14 determines the final shape of the lower flank 71 of the groove **10**, whereas the milling cutter **64** determines the final shape of the upper flank 72.

As mentioned in the introduction, preferably milling cutters **63** to **72** shall be used, having diameters G which are at least 5 times, and even better at least 20 times larger than the thickness F of the floor panels **1**.

Apart of the mentioned milling cutters, preferably still other milling cutters are applied, for example, in order to remove a part of the material to be removed during a first premachining cycle.

In the FIGS. 22 to 25, a particularly preferred form of embodiment of a floor panel **1** according to the invention is represented. Hereby, the parts which correspond with the previous embodiments are indicated with corresponding references.

An important characteristic herein consists in that the coupling parts **4**–**5** are provided with locking elements **6** which, in engaged condition with the panels in a common plane, exert a tension force upon each other, as a result of which the engaged floor panels **1** are forced towards each other in compression. As represented, this is realized preferably by providing the coupling parts with an elastically yieldable or bendable portion, in this case the lower lip **43**, which, in engaged condition, is at least partially bent and in this way creates a tension force which results in the engaged floor panels **1** being forced towards each other. The resultant bending V, as well as the tension force K, are indicated in the enlargement view of FIG. 23.

In order to obtain the tension force K pressing together the engaged floor panels **1**, the bendable portion, in this case the lip **43**, preferably is provided, as represented, with an inwardly and downwardly inclined lower lip contact surface **73** which preferably can cooperate with a corresponding lower tongue contact surface 74 on tongue **9**. These contact surfaces **73**–74 are similar to the aforementioned contact surfaces **39**–**38** and also similar to the inclined portions of the lower lip of FIGS. 2 to 4.

In the FIGS. 2 and 5, the portions form complementary matching shapes; it is, however, clear that, by a modification, also a tension effect similar to that shown in FIG. 23 can be realized.

Due to, on one hand, the contact along the angle A, and, on the other hand, the fact that a tension force K is created, a compression force component K1 is produced, as a result of which the floor panels **1** are drawn against each other in compression.

Preferably, the angle A of the mutual plane of tangency of contact surfaces **73**–74 relative to the horizontal plane is situated between 30 and 70 degrees. In the case that use is made of the embodiment whereby a tension force K is realized, an angle A of 30 to 70 degrees is ideal in order, on one hand, to effect an optimum pressing–together of the floor panels **1** and, on the other hand, to ensure that the floor panels **1** can easily be engaged and respectively disassembled.

US 6,928,779 B2

11

Although the pressing or compression force component K1 preferably is delivered by the aforementioned lip 43, the invention does not exclude other forms of locking elements or structures whereby this force is delivered by other bendable portions.

It is noted that the bending V is relatively small, for example, several hundredths up to several tenths of a millimeter, and does not have an influence upon the placement of the floor covering. Furthermore it should be noted that such floor covering generally is placed upon an underlayer (not shown) which is elastically compressible, as a result of which the bending V of the lip 43 only produces local bending of the underlayer.

Due to the fact that the lip 43 is bent apart and that it remains somewhat bent apart in engaged position, the additional advantage is obtained that, when exerting a pressure upon the floor covering, for example, when placing an object thereupon, the pressing–together compressive force is enhanced and, thus, the development of gaps is counteracted even more.

It is noted that the inventors have found that, contrary to all expectations, an ideal tension force can be realized by manufacturing the coupling parts 4–5, including the locking elements 33–34, and preferably the complete core 8, of HDF board or MDF board, although these material normally only allow a minor elastic deformation.

HDF and MDF also offer the advantage that smooth surfaces are obtained, as a result of which the locking elements can be moved easily over each other.

According to a variant of the invention, the tension force can also be supplied by means of an elastic compression of the material of the coupling parts themselves, to which end these coupling parts, and preferably the complete core 8, would be manufactured using an elastically compressible material.

A further particular characteristic of the embodiment of FIGS. 22 to 25 consists in that the floor panels 1 can be selectively engaged by means of a turning movement, as represented in FIG. 24, as well as by means of laterally shifting them towards each other in substantially a common plane, as represented in FIG. 25, preferably in such a manner that, during the engagement by means of the turning movement with the coupling parts partially engaged, a maximum bending Vm results in the coupling parts, more particularly in the lip 43, which bending Vm is less pronounced, if not nonexistent, as in the FIGS. 2 to 4, in comparison to the bending Vm which results when the floor panels 1 are engaged by means of shifting them towards each other, as in FIG. 15.

The advantage of this consists in that the floor panels 1 can be engaged easily by means of a turning movement, without necessitating use of a tool therefore, whereas it still remains possible to engage the floor panels also by means of shifting them laterally. This latter is useful, in first instance, when the last panel has to be placed partially under a door frame or similar situation. In this case, the floor panel 1 can be pushed under the door frame with the side which does not have to be engaged and subsequently, possibly by means of tools, can be snapped into the adjacent floor panel by lateral sliding together.

It is noted that the shapes of the coupling parts 4–5 shown in FIGS. 22 to 25 can also be used for the coupling parts 28–29 of the short sides of the panels.

According to the invention, in the case that the four sides 2–3–26–27 are provided with coupling pars 4–5–28–29, these coupling parts can be formed in such a manner that in one direction a firmer engagement than in the other direction

12

is effected. In the case of elongated floor panels 1, for example, such as represented in FIG. 1, the locking at the small sides 26–27 preferably shall be more pronounced than at the longitudinal sides 2–3. The length of the parts at the small sides, namely, is smaller and, in principle, less firm. This is compensated for by providing a more pronounced locking.

This difference in engagement can be obtained by shaping the contact surfaces 73–74 with different angles.

Preferably, the aforementioned protrusion, more particularly the locking element 33, is bounded by at least two portions 75–76 (shown in FIG. 22), respectively a portion 75 with a strong (steep) inclination which provides for the locking, and a portion 76 with a weaker (less inclined) inclination which renders the engagement or guidance of the coupling parts easier. In the embodiment of FIGS. 22 to 25, these portions 75–76 are formed by straight planes to define local sharp protrusions, but as already described with reference to FIG. 9, use can also be made of curved portions 50–51. In FIG. 5, these are the contact surface 38 and the inclined portion 40.

In the preferred form of the invention, the floor panels 1 comprise coupling parts 4–5 and/or 28–29 exhibiting one of the following or the combination of two or more of the following features:

a curvature 77 (shown in FIG. 22) at the lower side of the tongue 9 and/or a curvature 78 at the lower lip 43 which form a guidance when turning two floor panels 1 into each other, with the advantage that the floor panels 1 can be engaged into each other easily during installation;

roundings 79–80 at the edges of the locking elements 33–34, with the advantages that the locking elements can easily shift over each other during their engagement, or during disassembly of the floor panels 1 and that the locking elements will not be damaged, for example, crumble away at their edges, even if the floor panels are engaged and disassembled;

dust chambers or clearances 81, or spaces 21 as in FIG. , or chamber 25' in FIG. 4, or spaces S in FIG. 9, between all sides, directed laterally towards each other, of the engaged floor panels 1, with the advantage that inclusions which get between the floor panels 1 during the engagement do not exert an adverse influence upon good engagement;

a shaping of the tongue 9 which is such, for example, by the presence of a chamfer 82, that the upper side of the tongue 9 becomes situated from the first joining together or substantial contact of the panels, under the lower side of the upper lip 42 when the floor panels 1 are pushed towards each other in substantially the same plane, as indicated in FIG. 25, with the advantage that the front extremity or end of the tongue 9 does not press against the front side of the upper lip 42 or the front edge of the bottom lip 43 when the floor panels 1 are pushed towards each other in the same plane;

a ramp surface 83, hereinbefore also called inclined portion 41, formed at the distally outer end of the lower lip 43, with the advantage that the locking elements 33–34 shift smoothly over each other and that the lower lip 43 is bent uniformly;

in the engagement direction only one important contact point which is formed by a section 84 at the location of the upperside edges of the floor panels 1, with the advantage that the aforementioned tension force is optimally transferred to the upper side of the floor

13

panels 1 and that the development of openings between the floor panels 1 is counteracted;

contact surfaces 85–86, more particularly abutment surfaces, formed by the upper side of the tongue 9 and the upper side of the groove 10 which, over the largest portion of their length, are flat and run parallel to the plane which is defined by the floor panels 1, as well as contact surfaces cooperating with each other, formed by curvatures 77–78, with the advantage that no mutual displacement in height between two engaged floor panels 1 is possible, even if the insertion depth of the tongue 9 into the groove 10 should vary due to various causes; in other words, no height differences may occur between the adjacent floor panels.

In the embodiment of FIGS. 22 to 25, all these characteristics are combined; it is, however, clear that, as becomes evident from FIGS. 2 to 11, these features can also be provided separately or in a limited combination with one another.

As becomes evident from FIGS. 5 to 7 and 22 to 25, an important characteristic of the preferred embodiment of the invention consists in that the cooperative locking element 6, in otherwords, the portion providing for the snap-together and engagement effect, are situated in that portion of the lower lip 23–43 which extend beyond the distal edge of the upper lip 22–42, more particularly, the lowermost point or apex 87 of the locking part 33 is situated under the top layer of the floor panel 1. For clarity's sake, this top layer is indicated in the FIGS. 22–25 only as a single layer.

It should be noted that the combination of features, the lower lip 23–43 extending further than the upper lip 22–42; the locking elements 6 being formed at least by means of a contact surface portion which inwardly slopes downward, and wherein this portion, at least partially, is located in the portion of the lower lip 23–43 which extends distally beyond the upper lip 22–42, is particularly advantageous, among others, in comparison with the couplings for floor panels described in the documents WO 94/01628, WO 94/26999, WO 96/27719 and WO 96/27721. The sloping contact surface portion offers the advantage that the floor panels 1 can be disassembled again. The fact that this sloping portion is situated in the extended portion of the lower lip 23–43 adds the advantage that no deformations can occur during coupling which manifest themselves up to the top layer.

According to a preferred characteristic of the invention, the aforementioned portion, i.e. the contact surface 39 or 73, preferably extends in such a manner that the distance between the upper edge 16 of the panel to the contact surface 39, 73 diminishes between the proximal and distal ends of the sloping contact surface 39, 73, in other words, such that, as represented in FIG. 22, the distance X2 is smaller than the distance X1. This is also the case in FIG. 7.

Still preferably, this portion only starts at a clear distance El from the outer edge of upper lip 42.

It is obvious that the coupling parts 22 to 25 can also be shaped by means of said milling process.

According to a particular characteristic of the invention, the floor panels 1 are treated at their sides 2–3 and/or 26–27 with a surface densifying agent, more particularly a surface hardening agent, which preferably is chosen from the following series of products: impregnation agents, pore-sealing agents, lacquers, resins, oils, paraffins and the like.

In FIG. 22, such impregnation 88 is represented schematically. This treatment can be performed over the complete surface of the sides 2–3 and/or 26–27 or only over specific portions hereof, for example exclusively on the surfaces of the tongue 9 and the groove 10.

14

The treatment with a surface densifying agent offers, in combination with the snap-together effect, the advantage that in various aspects better coupling characteristics are obtained. As a result of this, the coupling parts 4–5 and/or 28–29 better keep their shape and strength, even if the floor panels 1 are engaged and disassembled repeatedly. In particular, if the core 8 is made of HDF, MDF or similar materials, by means of this treatment a better quality of surface condition is obtained, such that no abrasion of material occurs during engaging, or during disassembling.

This treatment also offers the advantage that, at least in the case of a surface hardening, the aforementioned elastic tensioning effect is enhanced.

The present invention is in no way limited to the forms of embodiment described by way of example and represented in the figures, however, such floor covering and the pertaining floor panels 1 can be embodied in various forms and dimensions without departing from the scope of the invention.

For example, the various characteristics which are described by means of the represented embodiments or examples may be selectively combined with each other.

Furthermore, all embodiments of coupling elements described before can be applied at the longer side as well as at the shorter side of a panel.

What is claimed is:

1. A floor covering panel comprising laminated hard floor panel having a wood-based core material comprising a ground wood product and a binding agent unified to form a cured composite;

said floor panel having a decorative layer above said core material;

said floor panel having an upper side, an under side and a perimeter defining first and second pairs of opposed substantially parallel sides;

said first and second pairs of sides both being provided with coupling parts substantially in the form of a tongue and a groove the coupling parts further including locking elements;

said groove of at least said first pair of sides including an upper lip and a lower lip, said lower lip extending distally beyond the upper lip;

said coupling parts cooperating to establish a locking between coupled parts in a direction perpendicular to the plane of the panel as well as in a direction perpendicular to the side edges and parallel to a plane including the panel when the coupling parts of a plurality of ones of said panel are coupled;

said tongue, groove and locking elements being monolithically formed in said composite core;

said coupling parts and locking elements of at least said first pair of sides enabling coupling of two of such panels so that the panels are coupled without play in the plane of the coupled panels;

the coupling parts of said first pair of sides being engageable and coupled by rotational motion relative to each other;

said tongue of said first pair of sides including an upper tongue contact surface and a lower tongue contact surface and an outer peripheral portion of the tongue defined along and between said tongue contact surfaces;

said groove of said first pair of sides including corresponding upper and lower groove contact surfaces which engage the upper and lower tongue contact surfaces of said tongue upon coupling of said coupling parts;

US 6,928,779 B2

15

said lower tongue and groove contact surfaces comprising said coupling parts and locking elements enabling coupling of two of such panels so that the panels are coupled without play in a plane including the coupled panels;

said coupling parts of said first pair of sides upon coupling defining a plurality of separate clearances adjacent at least a portion of said outer peripheral portion of said tongue between said tongue and groove and said tongue;

said panel at said first pair of sides comprising at least one intermediate tongue contact surface on said tongue positioned along the outer peripheral portion of said tongue intermediate the upper and lower tongue contact surfaces;

said panel at said first pair of sides comprising at least one intermediate groove contact surface intermediate the upper and lower groove contact surfaces; and

said intermediate tongue and groove contact surfaces of two of said panels cooperating with each other upon coupling of two of said panels.

2. The floor panel according to claim 1, wherein said intermediate contact surface on said groove is disposed proximally relative to a distalmost portion of said upper lip.

3. The floor covering according to claim 1, wherein at least one clearance is defined by said engaged tongue and groove in an area between the respective intermediate tongue and groove contact surfaces and the lower tongue and groove contact surfaces of said engaged tongue and groove.

4. The floor covering panel according to claim 1, wherein the coupling parts of said second pair of sides are engageable and coupled by rotational motion relative to each other about an axis extending parallel to said sides.

5. The floor covering panel according to claim 1, wherein the cured composite core comprises MDF/HDF.

6. The floor covering according to claim 1, wherein the locking elements include a locking protrusion defined on the tongue and a cooperating recess defined in the groove.

7. The floor covering panel according to claim 6, wherein the locking protrusion is defined on an under side of said tongue.

8. The floor covering panel according to claim 6, wherein the locking protrusion is in the form of a local sharp protrusion on the under side of said tongue.

9. The floor covering panel according to claim 6, wherein the cooperating recess formed in the lower lip defines a portion of a clearance between the tongue and the groove that is established when the coupling parts are coupled.

10. The floor covering panel according to claim 7, wherein the locking protrusion provided in the under side of the tongue extends substantially downward from the under side of the tongue and the recess defined in the groove is aligned with the locking protrusion when the coupling parts are coupled.

11. The floor covering panel according to claim 1, wherein the lower lip has a cross-section configuration uniform along the length of the respective edge including the lower lip and has a non-uniform thickness between upper and under sides thereof.

12. The floor covering panel according to claim 11, wherein the lower lip has a thickness adjacent a proximal inner portion of the groove that becomes non-uniformly thinner in the distal direction of the lip.

13. A floor covering panel comprising hard floor panel having a perimeter defining at least a first pair of opposed substantially parallel edges and substantially planar and parallel upper and lower sides;

16

said pair of edges being provided with complementary coupling parts substantially in the form of a tongue and groove extending distally along the length of said pair of edges and being formed in the panel material which is located between said planar upper and lower sides;

the coupling parts further including locking elements;

said coupling parts and locking elements cooperating upon coupling of said coupling parts such that coupled ones of said panel are locked in a direction perpendicular to the plane of the panel as well as in a direction perpendicular to the edges and parallel to a plane including the panel;

said groove having an upper lip and a lower lip, said lower lip extending distally beyond said upper lip;

said upper lip defining a first clearance below said upper side of said panel and defining an upper lip contact surface adjacent said clearance, said first clearance defining an upper chamber below said upper side and above said tongue upon coupling of cooperating coupling parts;

said lower lip having an inwardly and downwardly inclined lower lip contact surface formed therein;

said tongue having an upper tongue contact surface and a lower tongue contact surface located along the tongue periphery such that the upper and lower tongue contact surfaces respectively abut the upper and lower lip contact surfaces when adjacent panels are coupled; and

at least one second chamber being defined between the tongue and groove in the area along the tongue periphery between the respective upper tongue contact surface and the lower tongue contact surface when adjacent panels are coupled.

14. The floor covering panel according to 13, wherein the tongue and groove may be coupled to each other by rotating one coupling part relative to another cooperating coupling part about an axis extending parallel to the respective coupled edges.

15. The floor covering panel according to claim 13, wherein said first clearance is a closed chamber bounded on a lower side by abutting upper lip and upper tongue contact surfaces upon coupling of said coupled parts.

16. The floor covering panel according to claim 15, said upper lip contact surface extending along the panel edge and parallel to the plane of the panel.

17. The floor covering panel according to claim 13, wherein said floor panel is a laminate including an MDF/HDF core.

18. The floor covering panel according to claim 13, wherein said tongue, groove and locking elements of at least said first pair of edges enable two of such panels to be coupled to each other without play in the plane of the coupled panels.

19. The floor covering panel according to claim 13, wherein said second chamber is located in front of the distal end of the tongue tip.

20. The floor covering panel according to claim 13, wherein said locking elements include a locking protrusion at the lower side of the tongue, said second chamber being located below said tongue and in front of said locking protrusion.

21. The floor covering panel according to claim 13, wherein the panel is a laminate and includes a core, and said coupling parts as well as said locking elements are made in one piece with said core.

22. The floor covering panel according to claim 13, wherein the locking elements include a locking protrusion at

US 6,928,779 B2

17

the lower side of the tongue, said protrusion having a convex rounded bottom profile.

**23.** The floor covering panel according to claim **13**, wherein the locking elements include a locking protrusion at the lower side of the tongue, said protrusion having a convex rounded profile and a recess in the lower lip, said recess having a concave rounded profile.

**24.** The floor covering panel according to claim **23**, wherein said rounded profiles are substantially circle-shaped.

**25.** The floor covering panel according to claim **23**, wherein said lower lip contact surface and said lower tongue contact surface comprise said locking elements.

**26.** The floor covering panel according to claim **23**, wherein said locking protrusion, seen in cross-section, extends over a substantial portion of the lower side of the tongue.

**27.** A floor covering panel for forming a floating floor:

said floor panel having a core material and a decorative layer material above said core material;

said floor having a thickness between 0.5 and 1.5 cm;

said floor panel having an upper side, an under side and a perimeter defining first and second pairs of opposed substantially parallel sides;

said first and second pairs of sides both being provided with coupling parts, the coupling parts further including locking elements;

said groove of at least said first pair of sides including an upper lip and a lower lip, said lower lip extending distally beyond the upper lip;

said coupling parts of at least said first pair of side cooperating to establish a locking between coupled parts in a direction perpendicular to the plane of the

18

panel as well as in a direction perpendicular to the side edges and parallel to a plane including the panel when the coupling parts of a plurality of ones said panel are coupled;

said tongue, groove and locking elements or said first pair of sides being formed in one piece with the panel, the coupling parts of said first pair of sides being engageable and coupled by rotational motion relative to each other;

said locking elements of at least said first pair of sides including a locking protrusion defined on the tongue and a cooperating recess defined in the groove;

said locking protrusion being in the form of a local sharp protrusion on the under side of said tongue;

said protrusion in one direction laterally being delimited by a first surface, said first surface acting as a locking element preventing relative movement between coupled panels in a direction parallel to a plane including the coupled panels;

said protrusion, in the opposite direction being limited by a second surface; and

said tongue and groove defining a clearance which is located directly adjacent said second surface and below the tongue portion which is located distally beyond said protrusion.

**28.** The floor covering panel according to claim **27**, wherein the core material is MDF or HDF.

**29.** The floor covering panel according to claim **27**, wherein said coupling parts of said at least first pair of sides are configured so that when coupled they are free of play.

* * * * *

# EXHIBIT  C

US006490836B1

(12) **United States Patent**
Moriau et al.

(10) Patent No.: **US 6,490,836 B1**
(45) Date of Patent: *Dec. 10, 2002

(54) **FLOOR PANEL WITH EDGE CONNECTORS**

(75) Inventors: **Stefan Simon Gustaaf Moriau**, Ghent
(BE); **Mark Gaston Maurits Cappelle**,
Staden (BE); **Bernard Paul Joseph
Thiers**, Oostrozebeke (BE)

(73) Assignee: **Unilin Beheer B.V. Besloten
Vennootschap**, Nieuwekerk A/D Ijssel
(NL)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **09/471,014**

(22) Filed: **Dec. 23, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 08/872,044, filed on Jun.
10, 1997, now Pat. No. 6,006,486.

(30) **Foreign Application Priority Data**

Jun. 11, 1996 (BE) ............................................. 09600527
Apr. 15, 1997 (BE) ............................................. 09700344

(51) Int. Cl.[7] ................................................. E04B 2/08
(52) U.S. Cl. ................... **52/589.1**; 52/592.1; 52/586.1;
52/590.2; 52/592.3
(58) Field of Search ............................. 52/578.1, 589.1,
52/592.1, 590.2, 592.7, 586.1, 570, 572,
591.1, 590.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 753,791 | A | 3/1904 | Fulghum |
| 1,124,228 | A | 1/1915 | Houston |
| 1,986,739 | A | 1/1935 | Mitte |
| 1,988,201 | A | 1/1935 | Hall |
| 2,276,071 | A | 3/1942 | Scull |
| 2,430,200 | A | 11/1947 | Wilson |
| 2,740,167 | A | 4/1956 | Rowley |
| 3,045,294 | A | 7/1962 | Livezey, Jr. |
| 3,267,630 | A | 8/1966 | Omholt |
| 3,310,919 | A | 3/1967 | Bue et al. |
| 3,387,422 | A | 6/1968 | Wanzer |
| 3,526,420 | A | 9/1970 | Brancaleone |
| 3,538,665 | A | 11/1970 | Gall |
| 3,694,983 | A | 10/1972 | Couquet |
| 3,731,445 | A | 5/1973 | Hoffmann et al. |
| 3,759,007 | A | 9/1973 | Thiele |
| 3,859,000 | A | 1/1975 | Webster |
| 4,164,832 | A | 8/1979 | Van Zandt |
| 4,169,688 | A | 10/1979 | Toshio |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | A 13098/83 | 10/1983 |
| BE | 417526 | 9/1936 |

(List continued on next page.)

OTHER PUBLICATIONS

Observations of M. Kandl submitted in European patent
application No. 00201515.4 of Unilin Beheer, Oct. 18, 2001.

(List continued on next page.)

*Primary Examiner*—Yvonne M. Horton
(74) *Attorney, Agent, or Firm*—Bacon & Thomas

(57) **ABSTRACT**

Floor covering, including hard floor panels (1) which, at
least at the edges of two opposite sides (2–3, 26–27), are
provided with coupling parts (4–5, 28–29), cooperating
which each other, substantially in the form of a tongue
(9–31) and a groove (10–32), wherein the coupling parts
(4–5, 28–29) are provided with integrated mechanical lock-
ing elements (6) which prevent the drifting apart of two
coupled floor panels in a direction (R) perpendicular to the
related edges (2–3, 26–27) and parallel to the underside (7)
of the coupled floor panels (1).

**30 Claims, 10 Drawing Sheets**



US 6,490,836 B1

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,426,820 | A | 1/1984 | Terback et al. |
| 4,501,102 | A | 2/1985 | Knowles |
| 4,641,469 | A | 2/1987 | Wood |
| 4,738,071 | A | 4/1988 | Ezard |
| 4,769,963 | A | 9/1988 | Meyerson |
| 4,819,932 | A | 4/1989 | Trotter |
| 5,029,425 | A | 7/1991 | Bogataj |
| 5,179,812 | A | 1/1993 | Hill |
| 5,216,861 | A | 6/1993 | Meyerson |
| 5,295,341 | A | 3/1994 | Kajiwara |
| 5,349,796 | A | 9/1994 | Meyerson |
| 5,502,939 | A | 4/1996 | Zadok et al. |
| 5,630,304 | A | 5/1997 | Austin |
| 5,706,621 | A | 1/1998 | Pervan |
| 5,768,850 | A | 6/1998 | Chen |
| 5,797,175 | A | 8/1998 | Schneider |
| 5,797,237 | A | 8/1998 | Finkell, Jr. |
| 5,860,267 | A | 1/1999 | Pervan |
| 6,023,907 | A | 2/2000 | Pervan |
| 6,182,410 | B1 | 2/2001 | Pervan |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| BE | 557844 | 5/1957 |
| CA | 991373 | 6/1976 |
| CH | 200949 | 11/1938 |
| CH | 211877 | 10/1940 |
| CH | 562 377 | 4/1975 |
| DE | 1212275 | 3/1966 |
| DE | 1 534 802 | 4/1970 |
| DE | 7102476 | 1/1971 |
| DE | 1534278 | 11/1971 |
| DE | 2238660 | 2/1974 |
| DE | 7402354 | 5/1974 |
| DE | 2502992 | 7/1976 |
| DE | 2616077 | 10/1977 |
| DE | 2917025 | 11/1980 |
| DE | 3041781 | 6/1982 |
| DE | 3246376 | 6/1984 |
| DE | 3343601 | 6/1985 |
| DE | 8604004 | 6/1986 |
| DE | 3512204 | 10/1986 |
| DE | 3544845 | 6/1987 |
| DE | 4215273 | 11/1993 |
| DE | 4242530 | 6/1994 |
| EP | 0248127 | 12/1987 |
| EP | 0 667 936 B2 | 7/2000 |
| FR | 1293043 | 11/1962 |
| FR | 2568295 | 1/1986 |
| FR | 2630149 | 10/1989 |
| FR | 2675174 | 10/1992 |
| FR | 2691491 | 11/1993 |
| FR | 2697275 | 4/1994 |
| GB | 424057 | 2/1935 |
| GB | 1127915 | 9/1968 |
| GB | 1237744 | 6/1971 |
| GB | 1275511 | 5/1972 |
| GB | 1430423 | 3/1976 |
| GB | 2117813 | 10/1983 |
| GB | 2243381 | 10/1991 |
| GB | 2256023 | 11/1992 |
| JP | 54-66528 | 5/1979 |
| JP | 57-119056 | 7/1982 |
| JP | 3-169967 | 7/1991 |
| JP | 5-148984 | 6/1993 |
| JP | 6-146553 | 5/1994 |
| JP | 6-200611 | 7/1994 |
| JP | 6-56310 | 8/1994 |
| JP | 6-320510 | 11/1994 |
| JP | 7 076923 | 3/1995 |
| JP | 7-180333 | 7/1995 |
| JP | 07180333 | 7/1995 |
| JP | 7-300079 | 11/1995 |
| JP | 7-310426 | 11/1995 |
| JP | 8-270193 | 11/1996 |
| NL | 76 01773 | 8/1976 |
| SE | 372051 | 12/1974 |
| SE | 450141 | 5/1987 |
| SE | 501014 | 10/1994 |
| SE | 502994 | 3/1996 |
| WO | WO 84/02155 | 6/1984 |
| WO | WO 93/13280 | 7/1993 |
| WO | WO 94/01628 | 1/1994 |
| WO | WO 94/01688 | 1/1994 |
| WO | WO 94/26999 | 11/1994 |
| WO | WO 96/27719 | 9/1996 |
| WO | WO 96/27721 | 9/1996 |

## OTHER PUBLICATIONS

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Dec. 18, 2001.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 14, 2002.

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Jan. 24, 2002.

Valinge Aluminium Observations Regarding Unilin European Patent No. EP 0 83 763 (Nov. 19, 1998).

Valinge Aluminium Opposition Against Unilin Australia Patent Application No. 713 628 (AU—B 325 60/97) (Jun. 6, 2000).

Kronotex Arguments in Appeal from Decision of German Patent Court Upholding Validity of Unilin German Utility Model Patent No. DE–UM 29 710 175 (Jul. 17, 2000).

Kronotex Opposition Against Unilin Australian Patent Application No. 713,628 AU–B (32569/97) (Sep. 1, 2000).

EFP Floor Products Opposition Against Unilin European Patent No. EP 0 843 763 (Oct. 27, 2000).

Valinge Aluminium Opposition Against Unilin New Zealand Patent 329,581 (Jun. 2001).

Kronotex Opposition Against Unilin European Patent No. EP 0 843 763 (Jun. 29, 2001).

Abgustaff Kahr Opposition Against Unilin European Patent No. EP 0 843 763 (Jun. 29, 2001).

Hornitex–Werke Opposition to Unilin European Patent No. EP 0 843 763 (Jul. 4, 2001).

Kronospan Opposition Against Unilin European Patent No. EP 0 843 763 (Jul. 14, 2001).

Kronotex Arguments filed before Federal Patent Court in Appeal from Adverse Decision of German Patent Office Upholding Validity on Unilin German Utility Model Patent No. DE–UM 297 10 175 (Jul. 24, 2001).

Valinge Aluminium Opposition Against Unilin European Patent No. EP 0 843 763 with Copies of Cited Documents (Aug. 6, 2001).

Kronospan Action to Nullify Unilin German Utility Model Patent No. 297 24 428 U1, Including Cited Documents E2 (with Partial Translation); E3; E5; and E6 (with Translation) (Aug. 9, 2001).

Akzenta Brief (Arguments) in Support of Intervention in Opposition Against Unilin European Patent No. EP 0 843 763 (Sep. 11, 2001).

Observations by Third Party (Kandl) Regarding Patentability of Unilin European Patent Application No. 00201515.4 (Including Partial Translation of Document E2 Cited Therein) (Oct. 10, 2001).



*Fig.1*



*Fig.8*









*Fig. 12*

*Fig. 13*



*Fig.14*

*Fig.15*



*Fig.16*



*Fig.17*

*Fig.18*

*Fig.19*



*Fig.20*



*Fig.21*



*Fig. 22*

*Fig. 23*



*Fig.24*



*Fig.25*

US 6,490,836 B1

1

**FLOOR PANEL WITH EDGE CONNECTORS**

RELATED APPLICATION DATA

This application is a continuation of an application Ser. No. 08/872,044 filed Jun. 10, 1997 now U.S. Pat. No. 6,006,486.

BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to a floor covering, made of hard floor panels.

2. Related Technology

In the first instance, the invention is intended for so-called laminated floors, but generally it can also be applied for other kinds of floor covering, consisting of hard floor panels, such as veneer parquet, prefabricated parquet, or other floor panels which can be compared to laminated flooring.

It is known that such floor panels can be applied in various ways.

According to a first possibility, the floor panels are attached at the underlying floor, either by glueing or by nailing them on. This technique has a disadvantage that is rather complicated and that subsequent changes can only be made by breaking out the floor panels.

According to a second possibility, the floor panels are installed loosely onto the subflooring, whereby the floor panels mutually match into each other by means of a tongue and groove coupling, whereby mostly they are glued together in the tongue and groove, too. The floor obtained in this manner, also called a floating parquet flooring, has as an advantage that it is easy to install and that the complete floor surface can move which often is convenient in order to receive possible expansion and shrinkage phenomena.

A disadvantage with a floor covering of the above-mentioned type, above all, if the floor panels are installed loosely onto the subflooring, consists in that during the expansion of the floor and its subsequent shrinkage, the floor panels themselves can drift apart, as a result of which undesired gaps can be formed, for example, if the glue connection breaks.

In order to remedy this disadvantage, techniques have already been through of whereby connection elements made of metal are provided between the single floor panels in order to keep them together. Such connection elements, however, are rather expensive to make and, furthermore, their provision or the installation thereof is a time-consuming occupation.

Examples of embodiments which apply such metal connection elements are described, among others, in the documents WO 94/26999 and WO 93/13280.

Furthermore, couplings are known which allow coupling parts to snap fit into each other, e.g., from the documents WO 94/1628, WO 96/27719 and WO 96/27721. The snapping-together effect obtained with these forms of embodiment, however, does not guarantee a 100-percent optimum counteraction against the development of gaps between the floor panels, more particularly, because in fact well-defined plays have to be provided in order to be sure that the snapping-together is possible.

From GB 424.057, a coupling for parquetry parts is known which, in consideration of the nature of the coupling, only is appropriate for massive wooden parquetry.

Furthermore, there are also couplings for panels known from the documents GB 2.117.813, GB 2,256.023 and DE 3.544.845. These couplings, however, are not appropriate for connecting floor panels.

2

BRIEF SUMMARY OF THE INVENTION

The invention aims at an improved floor covering of the aforementioned type, the floor panels of which can be coupled to each other in an optimum manner and/or the floor panels of which can be manufactured in a smooth manner, and whereby preferably one or more of the aforementioned disadvantages are excluded.

The invention also aims at a floor covering which has the advantage that no mistakes during installing, such as gaps and such, can be created.

Furthermore, the invention also aims at a floor covering whereby the subsequent development of gaps is excluded or at least counteracted in an optimum manner, whereby also the possibility of the penetration of dirt and humidity is minimalized.

To this aim, the invention relates to a floor covering, consisting of hard floor panels which, at least at the edges of the two opposite sides, are provided with coupling parts, cooperating which each other, substantially in the form of a tongue and a groove, wherein the coupling parts are provided with integrated mechanical locking elements which prevent the drifting apart of two coupled floor panels into a direction perpendicular to the related edges and parallel to the underside of the coupled floor panels. Hereby, these coupling parts are optimalized in such a manner that they allow that any form of play is counteracted and preferably is excluded.

By integrated mechanical locking elements is understood that these form a fixed part of the floor panels, either by being connected in a fixed manner to the floor panels, or by being formed in one piece therewith.

In a first important preferred form of embodiment, the coupling parts are provided with locking elements which, in the engaged position of two or more of such floor panels, exert a tension force upon each other which force the floor panels towards each other. As a result of this that not only the formation of gaps counteracted during installation, but also in a later stage the development of gaps, from any causes whatsoever, is counteracted.

According to another characteristic of the invention, the coupling parts, hereby are formed in one piece with the core of the floor panels.

According to a second important preferred embodiment, the aforementioned optimalization is achieved in that the floor covering panel possesses the following combination of characteristics: the coupling parts and locking elements are formed in one piece with the core of the floor panels; the coupling parts have such a shape that two subsequent floor panels can be engaged into each other exclusively by snapping together and/or turning, whereby each subsequent floor panel can be inserted laterally into the previous; the coupling parts are interlocked free from pay in all directions in a plane extending perpendicular to the aforementioned edges; the possible difference between the upper and lower lip of the lips which border the aforementioned grooves, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove, is smaller than one time the total of the thickness of the panel; the total thickness of each related floor panel is larger than or equal to 5 mm; and that the basic material of the floor panels, of which the aforementioned core and locking elements are formed, consists of a ground product which, by means of a binding agent or by means of melting together, is made into a unitary composite, and/or of a product on the basis of synthetic material and/or of a chip board with fine chips.

US 6,490,836 B1

3

Due to the fact that the coupling parts provide for an interlocking free from play, as well as due to the fact that these coupling parts are manufactured in one piece, from the basic material of the floor panels, a perfect connection between adjacent floor panels can always be guaranteed, even with repeated expansion and shrinkage of the floor surface.

This combination of characteristics can be combined or not with the aforementioned characteristic that the locking elements exert a tension force upon each other when panels are joined together.

According to a third important preferred embodiment, the characteristics of which may or may not be combined with the characteristics of the embodiments described above, the floor covering is characterized in that the lower lip which limits or defines the lower side of the groove, extends beyond the upper lip in the plane of the panel; the locking elements are formed at least of a contact portion which inwardly slopes downward; and that this portion, at least partially, is located in the portion of the lower lip which extends beyond the upper lip. The advantages of these features will appear from the further description.

According to a preferred form of embodiment, the floor panels are configured as elongated panels and the coupling parts described above are applied along the longitudinal sides of these panels.

According to a particular form of embodiment, coupling parts are provided at the other two sides, too, either of another construction than described above or not.

In the most preferred form of embodiment, for the basic material use shall be made of the aforementioned product, which, as said, is ground and, by means of a binding agent, made into a unitary composite material. More particularly, for the core use shall be made of finely-ground wood which preferably is glued, more particularly, moisture resistant glued. Still more particularly, for the core use shall be made of so-called HDF board (High Density Fibreboard) or MDF board (Medium Density Fibreboard) which is highly compressed ground wood particles and binder material. Hereinafter, the wood component of the core material shall be referred to as "wood product".

The fact that the invention is applied to floor panels the basic material of which consists of the material described above, offers the advantage that with he processing of this material, very smooth surfaces are obtained whereby very precise couplings can be realized, which, in first instance, is important in the case of a snap-together connection and/or turning connection free from play. Also, very special forms of coupling parts can be manufactured in a very simple manner because the aforementioned kinds of material can be processed particularly easy.

The surfaces obtained with HDF and MDF also have the advantage that the floor panels mutually can be shifted readily alongside each other in interlocked condition, even when engaged with a tensioning force.

The applicants also discovered that the aforementioned materials, in particular HDF and MDF, show ideal features in order to realize a connection, such as mentioned above, as these material show the right features in respect to elastic deformation in order to, on the one hand, realize a snap-together effect, and, on the other hand, receive expansion and shrinkage forces in an elastic manner, whereby it is avoided that the floor panels come unlocked or are damaged in an irreparable manner.

In the case that for the core use is made of a material based on synthetic material, to this end solid synthetic material can

4

be used as well as a mixture of synthetic materials, eventually composed of recycled materials.

The floor covering preferably is formed by joining the floor panels into each other free of glue. Hereby, the connections are of such nature that the floor panels can be disassembled without being damaged, such that, for example, when moving from one residence or location to another, they can be taken along in order to be placed down again. It is, however, clear that a glueing between tongue and groove is not excluded.

The invention, of course, also relates to floor panels which allow the realization of the aforementioned floor covering.

The invention also relates to a method for the manufacturing of the aforementioned floor panels with which the advantage that the tongues and/or grooves, including the corresponding locking means, can be provided at the floor panels at high production speeds without problems. More particularly, it aims at a method which allows that the rather complicated forms of the tongue and the groove of the aforementioned floor panels can be formed completely by means of milling cutters, the diameter of which can be chosen independent of the form to be realized, such that the use of small milling cutters, for example finger cutters, with diameters smaller than the depth of the tongue or groove can be excluded.

In accordance with this method the tongue and/or groove is formed by means of a milling process using at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in respect to the related floor panel. During each of the aforementioned milling cycles, preferably substantially the final form of one flank, either of the tongue or of the groove, is formed.

For the aforementioned two milling cycles, thus, milling cutters are used which extend outside the groove, respectively the tongue. More particularly the diameters of these milling cutters shall at least be 5 times and even better 20 times larger than the thickness of the floor panels.

The use of milling cutters having the aforementioned diameters has as an advantage that the normal production speeds can be maintained which are also applied during milling of a classical straight tongue and groove. There is also the advantage obtained that the installation of such milling cutters induce only minor or no additional costs because such milling cutters can be placed directly upon a motor shaft and/or the conventional machines can be used.

BRIEF DESCRIPTION OF THE DRAWINGS

With the intention of better showing the characteristics according to the invention, in the following, as an example without any limitative character, several preferred forms of embodiment are described, with reference to the accompanying drawings, wherein:

FIG. 1 represents a floor panel of a floor covering according to the invention;

FIG. 2, on a larger scale, represents a cross-section according to line II—II in FIG. 1;

FIGS. 3 and 4 represent how two floor panels with coupling parts according to FIG. 2 match into each other;

FIG. 5, on a larger scale, represents a cross-section according to line V—V in FIG. 1;

FIGS. 6 and 7 represent how two floor panels with coupling parts according to FIG. 5 match into each other;

FIGS. 8 to 11 represent a number of variants of coupling parts of floor panels according to the invention;

FIG. 12 schematically represents how the floor parts can be provided with coupling parts;

US 6,490,836 B1

5

FIG. 13 represents a cross-section according to line XIII—XIII in FIG. 12;

FIGS. 14 to 21, on a larger scale and in cross-section, represent the penetration of the milling cutters which are indicated in FIG. 12 with arrows F14 to F21;

FIG. 22 represents a floor panel according to the invention;

FIG. 23, on a larger scale, represents the coupling of two floor panels of FIG. 22;

FIGS. 24 and 25 represent two manners of coupling floor panels according to FIG. 22 to each other.

## DETAILED DESCRIPTION

The invention relates to a floor covering which is composed of hard floor panels 1, for example, such as a laminated panel as shown in FIG. 1.

These floor panels 1 can be of various shape, for example, rectangular or square, or of any other shape.

In the most preferred form of embodiment, they shall be manufactured in an elongated form, such as shown in FIG. 1, for example, with a length of 1 to 2 meters. The thickness, however, can also vary, but is preferably 0.5 to 1.5 cm, and more particularly 0.8 cm.

Each floor panel 1 is, at least at the edges of two opposite sides 2–3, provided with coupling parts 4–5 which permit two adjacent identical floor panels 1 to be coupled to each other.

According to the invention, the coupling parts 4–5, as represented in the FIGS. 2 to 4, are provided with integrated mechanical locking parts or locking elements 6 which prevent the drifting or sliding apart of two coupled floor panels 1 in a direction D perpendicular to the respective sides 2–3 and parallel to the underside 7 of the coupled floor panels 1; the coupling parts 4–5 and the locking elements 6 are formed in one piece with the core 8 of the floor panels 1; the coupling parts 4–5 have such a shape that two subsequent floor panels 1 can be engaged into each other solely by snapping-together and/or turning after the coupling parts are partially engaged, whereby each subsequent floor panel 1 can be laterally inserted into the previous; and the coupling parts 4–5 preferably are interlocked free from play in all directions in a plane which is located perpendicular to the aforementioned edges.

In the case of floor panels 1 with an elongated shape, as represented in FIG. 1, the respective coupling parts 4–5 are located at the longitudinal sides 2–3.

The coupling parts 4–5 can be realized in various forms, although the basic forms thereof will always be formed by a tongue 9 and a groove 10.

In the form of embodiment of FIGS. 2 to 4, the related floor panel 1 is provided with coupling parts 4–5 and locking means or locking elements 6 which allow two floor panels 1 to be mutually engaged by means of a turning movement, without the occurrence of any snap-together effect.

In the represented example, the locking elements 6 consist of a first locking element 11, formed by a protrusion with a bent round shape at the lower side 12 of the tongue 9, and a second locking element 13 (shown in FIG. 2), formed by a recess with a bent hollow or downwardly concave shape in the lower wall 14 of the groove 10.

The locking elements 11–13 ensure that two floor panels 1 which are coupled to each other can not move laterally in the horizontal plane with respect to each other.

In order to enable two floor panels 1 to be inserted into each other by means of a turning movement, the curvatures

6

preferably are circular. The bottom side 12 of locking means or locking elements 6 has a curvature with a radius R1, the center of which coincides with the respective upper edge 15 of the floor panel 1, whereas the lower wall 14 of the locking part 5 has a curvature with a radius R2 which is equal to the radius R1, but its center coincides with the respective upper edge 16. Radii R1 and R2 may also be applied which are larger or smaller than the distance to the upper edge 15, 16 respectively, and/or which differ from each other in size.

The upper side 17 of the tongue 9 and the upper wall or side 18 of the groove 10 are preferably flat and preferably are located in the horizontal plane.

The inner side 20 of the groove 10 and the 4 front side 19 of the tongue 9 of the two interlocked floor panels 1 preferably do not fit closely against each other, such that an intermediate space 21 is created between them into which possible dust remainders or such can be pushed away by means of the tongue 9.

The tongue 9 and the groove 10 preferably have shapes which are complementary to each other, such that the tongue 9 in the engaged condition of two identical floor panels 1 precisely sits against the upper wall 18 and the lower wall 14 of the groove 10, whereby a pressure P, exerted against the upper lip 22, is received or reacted not only by this lip 22, but by the complete structure, because this pressure can be transmitted through the tongue 9 and the lower lip 23 to cause the panels to be urged towards each other.

It is, however, clear that a number of minor deviations to these complementary forms can occur which, anyhow, have no or almost no effect upon the receipt and transmission of pressure forces. For example, a chamfer 24 and lip 22 on a recess 25 can be provided, as represented in FIGS. 2 to 4, as a result of which the subsequent floor panels 1 can easily be pushed and guided into each other, such that no possible ridges in the subflooring or such render good insertion difficult.

As represented in the FIGS. 5 to 7, the floor panels 1 according to the invention can also, along the sides 26–27 which are at a right angle to the sides 2–3, be provided with coupling parts 28–29 which have locking elements 30, too. The coupling parts 28–29 are preferably also realized in the shape of a tongue 31 and a groove 32. Hereby, the locking elements 30 do not have to be of the same nature as the locking elements 6.

Preferably, at the sides 26–27 locking elements are provided which allow for an engagement and interlocking by means of a lateral translation movement in direction T only, as represented in FIGS. 6 and 7. To this aim, the locking elements 30 consist of a snap-together connection with locking elements 33 and 34 which grip behind each other.

As represented in FIGS. 5 to 7, the locking element 33 preferably consists of a protrusion of the lower side 35 of the tongue 31 which can be located in a recess 36 in a lower lip 43 extending distally from the lower wall 37 of the groove 32. The locking element 34 is formed by the upward directed part or protrusion which defines the distally outer end of recess 36.

In this case, the locking elements 33–34 have contact surfaces 38–39 which are parallel to each other and preferably extend in an inclined manner, according to a direction which simplifies the snapping-together of the panels. The common plane of tangency L which is determined by the common tangent at the meeting point or area of surfaces 38–39, hereby forms an angle A sloping inwardly and downwardly from an outer region to an inner region relative to the underside 7, which angle is smaller than 90°.

US 6,490,836 B1

7

The locking elements 33–34 preferably are provided with inclined portions 40 and 41 which, when two floor panels 1 are engaged, cooperate with each other in such a manner that the locking elements 33–34 can easily be pushed over each other until they grip behind each other by means of a snap-together effect (FIGS. 6 and 7).

The thickness W1 of the tongue 31 preferably is equal to the width W2 of the groove 32, such that compression pressure P applied to the upper lip 42 is reacted by the tongue 31 which, in its turn, then is reacted by the lower lip 43.

Analogous to the chamfer 24 and recess 25, a recess 44 and a chamfer 45 are provided also at the edges 28–29.

It is noted that such a snap-together coupling can also be applied at the edges 2–3. Hereby, this can be a snap-together coupling analogous to these of FIGS. 5 to 7, but this can also be a snap-together coupling using other forms of coupling configurations, for example, such as represented in FIGS. 8 and 9. Contrary to the locking elements 33–34 which consist of rather local protrusions, in the forms of embodiment of FIGS. 8 and 9 use is made of locking elements 46–47 which, in comparison to the total width B of the coupling, extend over a rather large distance.

In this case, the locking elements 46–47 are also provided at the lower side 12 of the tongue 9 and the lower wall 14 of the groove 10.

According to FIG. 8, the locking elements 46–47 have contact surfaces 48–49 which are at an angle with the plane of the floor panel 1. In this manner, a coupling is obtained which is interlocked in a particularly fixed manner.

As represented in FIG. 9, the locking elements 46–47 possibly can be configured in such a manner that substantially only a linear contact is obtained, for example, because the contact surfaces directed towards each other are formed with different curvatures.

The surfaces, directed towards each other, of the locking elements 46–47 hereby consist of curved surfaces. The common plane of tangency L forms an angle A which is smaller than 90°, and more preferably is smaller than 70°.

In this manner, the locking element 46 preferably has two portions with a different curvature, on one hand, a portion 50 with a strong curvature and, on the other hand, a portion 51 with a weak curvature. The portion 50 with the strong curvature provides for the formation of a firm coupling. The portion 51 with the weak curvature facilitates the coupling parts 4–5 to be brought into each other easily. The intermediate space S forms a chamber which offers space for dust and the like which, when engaging two floor panes 1, inevitably infiltrates there.

In the case of a snap-together connection, for example, a connection such as represented in FIGS. 7 to 9, preferably the tongue 9–31 has a shape that thickens from below, which then can cooperate with a widened portion in the groove 10.

In FIG. 10, a variant is represented whereby at least at the level of the upper edges 15–16, a sealing material 52 is provided, as a result of which a watertight sealing can be assured. This sealing material 52 may consist of a strip or covering which is provided previously at the floor panel 1, either at one or both upperside edges 15–16.

In FIG. 11, a further variant is represented, whereby the locking element 6 is formed by an upward directed portion 53 at the tongue 9, which as a result of a turning movement of the panel, is brought behind a downward-directed portion 54 on the upper wall 18. More particularly, this is obtained by forming the upper side 17 and the upper wall 18 with a

8

curvature R3, the center of which is situated at the upperside edges 15–16, and forming the lower side 12 and the lower wall 14 with a radius R4, the center of which is also situated at the upperside edges 15 and 16, respectively. These radii R3–R4 can be chosen otherwise, too.

In general, according to the invention, the difference between, on one hand, the radius R1, R3 respectively, and, on the other hand, the radius R2, R4 respectively, preferably should not be larger than 2 mm.

It is also preferred that the center of these radii be situated inside the circle C1, C2 (see FIG. 2) respectively, which extends with a radius R5 of 3 mm centered at upperside edge 15, 16 respectively.

Finally it is noted that, according to the invention, the lower lip 23–43, as represented in FIGS. 2 to 7, can be formed distally longer than the upper lip 22–42. This has an advantage that the coupling parts 4–5–28–29 can be shaped in an easier manner by means of a milling cutter or the like. Furthermore, this simplifies the engagement of two floor panels 1, because each subsequent floor panel 1 during installation can be pushed upon the protruding lower lip 23–43, as a result of which the tongue 9–31 and the groove 10–32 automatically are positioned in front of each other.

The embodiments wherein the lower lip 23 is equal to or distally shorter than the upper lip 22, in their turn, offer the advantage that no protruding lip 23 remains at the extreme edge of the floor which might cause problems in finishing the floor installation.

In order to allow for a smooth assembly, to guarantee the necessary stability and firmness and in order to limit the quantity of material to be cut away, the difference E between the distally outer edge of the upper lip 22–42 and the distally outer edge of the lower lip 23–43, measured in the plane of the floor panel and perpendicular to the longitudinal direction of the groove 10, should preferably be kept smaller than one time the total thickness F of the floor panel 1. For stability's sake, normally this total thickness F shall never be less than 5 mm.

The small dimension of the difference E offers the advantage that the lower lip need not be strengthened by a reinforcement strip or the like.

According to a particular form of embodiment, the central line M1 through the tongue 9 and the groove 10 is situated lower than the center line M2 of the floor panel 1, such, that the upper lip 22–42 is thicker than the lower lip 23–43. In first instance, this is essential in this kind of connection, because then it is the lower lip 23–43 which bends, whereby the upper side of the floor panel 1 is kept free of possible deformations.

As explained in the introduction, for the core 8 a material is chosen from the following series:

a. a ground product which, by means of a binding agent or by means of melting together is made into a unitary composite material;
a product based on synthetic material;
chip board with fine chips.

The invention shows its usefulness, in first instance, preferably with laminated flooring, due to the reasons explained in the introduction.

As represented in the examples of the FIGS. 2 to 11, such laminated flooring preferably consists of a core 8 made of MDF medium density fiberboard board, HDF high density fiberboard board or similar, whereby at least at the upper side of the core 8 one or more layers of material are provided.

More particularly, it is preferred that the laminated flooring is provided with a decorative layer 55 and a protective

US 6,490,836 B1

9

top layer **56**. The decorative layer **55** is a layer, impregnated with resin, for example, made of paper, which can be imprinted with a variety of patterns, such as a wood pattern, a pattern in the form of stone, cork, or similar or even with a fancy pattern. The protective top layer **56** preferably also consists of a layer saturated with resin, for example, melamine resin, which in the final product is transparent.

It is clear that still other layers can be applied, such as an intermediate layer **57** upon which the decorative layer **55** is provided.

Preferably, also a backing layer **58** shall be applied at the underside **7**, forming a counterbalancing element for the top layers and, thus, guaranteeing the stability of the form of the floor panel **1**. This backing layer **58** may consist of a material, for example paper, impregnated with a resin, for example, a melamine resin.

As represented schematically in FIG. **12**, the tongue **9** and the groove **10**, and preferably also the tongue **31** and the groove **32** are formed by means of a milling process. In the case that a profile has to be applied on all four sides, the floor panels **1** preferably shall be displaced by means of two sequential perpendicular movements V1 and V2, whereby during the first movement profiles at two opposite edges are provided, in this case the longitudinal edges, by means of milling devices **59–60**, whereas during the second movement profiles are provided at the other edges, in this case the small edges, by means of milling devices **61–62**. During these processing, the floor panels **1** preferably are put with their decorative layer directed downward.

According to a particular characteristic of the invention, each respective tongue **9–31** and groove **10–32** are formed by means of a milling process with at least two sequential milling cycles or passes by means of milling cutters which are positioned at different angles in reference to the related floor panel **1**.

This is illustrated in FIGS. **13**, **14** and **15**, wherein it is represented how a groove **10** is realized by means of two milling cycles by means of two milling cutters **63** and **64**. FIGS. **16** and **17** represent how the tongue **9** is shaped by means of milling cutters **65** and **66**.

The FIGS. **18** **19** and **20** **21** represent similar views showing how the groove **32** and the tongue **31** are shaped by means of milling cutters **67–68** and **69–70**, positioned at an angle.

During each of the aforementioned milling passes, substantially the final shape of one flank is fully realized. For example, the milling cutter **63** of FIG. **14** determines the final shape of the lower flank **71** of the groove **10**, whereas the milling cutter **64** determines the final shape of the upper flank **72**.

As mentioned in the introduction, preferably milling cutters **63** to **72** shall be used, having diameters G which are at least 5 times, and even better at least 20 times larger than the thickness F of the floor panels **1**.

Apart of the mentioned milling cutters, preferably still other milling cutters are applied, for example, in order to remove a part of the material to be removed during a first premachining cycle.

In the FIGS. **22** to **25**, a particularly preferred form of embodiment of a floor panel **1** according to the invention is represented. Hereby, the parts which correspond with the previous embodiments are indicated with corresponding references.

An important characteristic herein consists in that the coupling parts **4–5** are provided with locking elements **6** which, in engaged condition with the panels in a common plane, exert a tension force upon each other, as a result of

10

which the engaged floor panels **1** are forced towards each other in compression. As represented, this is realized preferably by providing the coupling parts with an elastically yieldable or bendable portion, in this case the lower lip **43**, which, in engaged condition, is at least partially bent and in this way creates a tension force which results in the engaged floor panels **1** being forced towards each other. The resultant bending V, as well as the tension force K, are indicated in the enlargement view of FIG. **23**.

In order to obtain the tension force K pressing together the engaged floor panels **1**, the bendable portion, in this case the lip **43**, preferably is provided, as represented, with an inwardly and downwardly inclined contact surface **73** which preferably can cooperate with a corresponding contact surface **74** on tongue **9**. These contact surfaces **73–74** are similar to the aforementioned contact surfaces **39–38** and also similar to the inclined portions of the lower lip of FIGS. **2** to **4**.

In the FIGS. **2** and **5**, the portions form complementary matching shapes; it is, however, clear that, by a modification, also a tension effect similar to that shown in FIG. **23** can be realized.

Due to, on one hand, the contact along the angle A, and, on the other hand, the fact that a tension force K is created, a compression force component K1 is produced, as a result of which the floor panels **1** are drawn against each other in compression.

Preferably, the angle A of the mutual plane of tangency of contact surfaces **73–74** relative to the horizontal plane is situated between 30 and 70 degrees. In the case that use is made of the embodiment whereby a tension force K is realized, an angle A of 30 to 70 degrees is ideal in order, on one hand, to effect an optimum pressing-together of the floor panels **1** and, on the other hand, to ensure that the floor panels **1** can easily be engaged and respectively disassembled.

Although the pressing or compression force component K1 preferably is delivered by the aforementioned lip **43**, the invention does not exclude other forms of locking elements or structures whereby this force is delivered by other bendable portions.

It is noted that the bending V is relatively small, for example, several hundredths up to several tenths of a millimeter, and does not have an influence upon the placement of the floor covering. Furthermore it should be noted that such floor covering generally is placed upon an underlayer (not shown) which is elastically compressible, as a result of which the bending V of the lip **43** only produces local bending of the underlayer.

Due to the fact that the lip **43** is bent apart and that it remains somewhat bent apart in engaged position, the additional advantage is obtained that, when exerting a pressure upon the floor covering, for example, when placing an object thereupon, the pressing-together compressive force is enhanced and, thus, the development of gaps is counteracted even more.

It is noted that the inventors have found that, contrary to all expectations, an ideal tension force can be realized by manufacturing the coupling parts **4–5**, including the locking elements **33–34**, and preferably the complete core **8**, of HDF board or MDF board, although these material normally only allow a minor elastic deformation.

HDF and MDF also offer the advantage that smooth surfaces are obtained, as a result of which the locking elements can be moved easily over each other.

According to a variant of the invention, the tension force can also be supplied by means of an elastic compression of

US 6,490,836 B1

11

the material of the coupling parts themselves, to which end these coupling parts, and preferably the complete core 8, would be manufactured using an elastically compressible material.

A further particular characteristic of the embodiment of FIGS. 22 to 25 consists in that the floor panels 1 can be selectively engaged by means of a turning movement, as represented in FIG. 24, as well as by means of laterally shifting them towards each other in substantially a common plane, as represented in FIG. 25, preferably in such a manner that, during the engagement by means of the turning movement with the coupling parts partially engaged, a maximum bending Vm results in the coupling parts, more particularly in the FIG 43, which bending Vm is less pronounced, if not nonexistent, as in the FIGS. 2 to 4, in comparison to the bending Vm which results when the floor panels 1 are engaged by means of shifting them towards each other, as in FIG. 15.

The advantage of this consists in that the floor panels 1 can be engaged easily by means of a turning movement, without necessitating use of a tool therefore, whereas it still remains possible to engage the floor panels also by means of shifting them laterally. This latter is useful, in first instance, when the last panel has to be placed partially under a door frame or similar situation. In this case, the floor panel 1 can be pushed under the door frame with the side which does not have to be engaged and subsequently, possibly by means of tools, can be snapped into the adjacent floor panel by lateral sliding together.

It is noted that the shapes of the coupling parts 4–5 shown in FIGS. 22 to 25 can also be used for the coupling parts 28–29 of the short sides of the panels.

According to the invention, in the case that the four sides 2–3–26–27 are provided with coupling parts 4–5–28–29, these coupling parts can be formed in such a manner that in one direction a firmer engagement than in the other direction is effected. In the case of elongated floor panels 1, for example, such as represented in FIG. 1, the locking at the small sides 26–27 preferably shall be more pronounced than at the longitudinal sides 2–3. The length of the parts at the small sides, namely, is smaller and, in principle, less firm. This is compensated for by providing a more pronounced locking.

This difference in engagement can be obtained by shaping the contact surfaces 73–74 with different angles.

Preferably, the aforementioned protrusion, more particularly the locking element 33, is bounded by at least two portions 75–76 (shown in FIG. 22), respectively a portion 75 with a strong (steep) inclination which provides for the locking, and a portion 76 with a weaker (less inclined) inclination which renders the engagement or guidance of the coupling parts easier. In the embodiment of FIGS. 22 to 25, these portions 75–76 are formed by straight planes, but, as already described with reference to FIG. 9, use can also be made of curved portions 50–51. In FIG. 5, these are the contact surface 38 and the inclined portion 40.

In the preferred form of the invention, the floor panels 1 comprise coupling parts 4–5 and/or 28–29 exhibiting one of the following or the combination of two or more of the following features:

 a curvature 77 (shown in FIG. 22) at the lower side of the tongue 9 and/or a curvature 78 at the lower lip 43 which form a guidance when turning two floor panels 1 into each other, with the advantage that the floor panels 1 can be engaged into each other easily during installation;

 roundings 79–80 at the edges of the locking elements 33–34, with the advantages that the locking elements

12

can easily shift over each other during their engagement, or during disassembly of the floor panels 1 and that the locking elements will not be damaged, for example, crumble away at their edges, even if the floor panels are engaged and disassembled;

 dust chambers 81, or spaces 21 as in FIG. 4, between all sides, directed laterally towards each other, of the engaged floor panels 1, with the advantage that inclusions which get between the floor panels 1 during the engagement do not exert an adverse influence upon good engagement;

 a shaping of the tongue 9 which is such, for example, by the presence of a chamfer 82, that the upper side of the tongue 9 becomes situated from the first joining together or substantial contact of the panels, under the lower side of the upper lip 42 when the floor panels 1 are pushed towards each other in substantially the same plane, as indicated in FIG. 25, with the advantage that the front extremity or end of the tongue 9 does not press against the front side of the upper lip 42 or the front edge of the bottom lip 43 when the floor panels are pushed towards each other in the same plane;

 a ramp surface 83, hereinbefore also called inclined portion 41, formed at the distally outer end of the lower lip 43, with the advantage that the locking elements 33–34 shift smoothly over each other and that the lower lip 43 is bent uniformly;

 in the engagement direction only one important contact point which is formed by a section 84 at the location of the upperside edges of the floor panels 1, with the advantage that the aforementioned tension force is optimally transferred to the upper side of the floor panels 1 and that the development of openings between the floor panels 1 is counteracted;

 contact surfaces 85–86, more particularly abutment surfaces, formed by the upper side of the tongue 9 and the upper side of the groove 10 which, over the largest portion of their length, are flat and run parallel to the plane which is defined by the floor panels 1, as well as contact surfaces cooperating with each other, formed by curvatures 77–78, with the advantage that no mutual displacement in height between two engaged floor panels 1 is possible, even if the insertion depth of the tongue 9 into the groove 10 should vary due to various causes; in other words, no height differences may occur between the adjacent floor panels.

In the embodiment of FIGS. 22 to 25, all these characteristics are combined; it is, however, clear that, as becomes evident from FIGS. 2 to 11, these features can also be provided separately or in a limited combination with one another.

As becomes evident from FIGS. 5 to 7 and 22 to 25, an important characteristic of the preferred embodiment of the invention consists in that the cooperative locking element 6, in other words, the portion providing for the snap-together and engagement effect, are situated in that portion of the lower lip 23–43 which extends beyond the distal edge of the upper lip 22–42, more particularly the lowermost point 87 of the locking part 33 is situated under the top layer of the floor panel 1. For clarity's sake, this top layer is indicated in the FIGS. 22–25 only as a single layer.

It should be noted that the combination of features, the lower lip 23–43 extending further than the upper lip 22–42; the locking elements 6 being formed at least by means of a contact surface portion which inwardly slopes downward, and wherein this portion, at least partially, is located in the

US 6,490,836 B1

13

portion of the lower lip 23–43 which extends distally beyond the upper lip 22–42, is particularly advantageous, among others, in comparison with the couplings for floor panels described in the documents WO 94/01628, WO 94/26999, WO 96/27719 and WO 96/27721. The sloping contact surface portion offers the advantage that the floor panels 1 can be disassembled again. The fact that this sloping portion is situated in the extended portion of the lower lip 23–43 adds the advantage that no deformations can occur during coupling which manifest themselves up to the top layer.

According to a preferred characteristic of the invention, the aforementioned portion, i.e. the contact surface 39 or 73, preferably extends in such a manner that the distance between the upper edge 16 of the panel to the contact surface 39, 73 diminishes between the proximal and distal ends of the sloping contact surface 39, 73, in other words, such that, as represented in FIG. 22, the distance X2 is smaller than the distance X1. This is also the case in FIG. 7.

Still preferably, this portion only starts at a clear distance E1 from the outer edge of upper lip 42.

It is obvious that the coupling parts 22 to 25 can also be shaped by means of scaled milling process.

According to a particular characteristic of the invention, the floor panels 1 are treated at their sides 2–3 and/or 26–27 with a surface densifying agent, more particularly a surface hardening agent, which preferably is chosen from the following series of products: impregnation agents, pore-sealing agents, lacquers, resins, oils, paraffins and the like.

In FIG. 22, such impregnation 88 is represented schematically. This treatment can be performed over the complete surface of the sides 2–3 and/or 26–27 or only over specific portions hereof, for example exclusively on the surfaces of the tongue 9 and the groove 10.

The treatment with a surface densifying agent offers, in combination with the snap-together effect, the advantage that in various aspects better coupling characteristics are obtained. As a result of this, the coupling parts 4–5 and/or 28–29 better keep their shape and strength, even if the floor panels 1 are engaged and disassembled repeatedly. In particular, if the core 8 is made of HDF, MDF or similar materials, by means of this treatment a better quality of surface condition is obtained, such that no abrasion of material occurs during engaging, or during disassembling.

This treatment also offers the advantage that, at least in the case of a surface hardening, the aforementioned elastic tensioning effect is enhanced.

The present invention is in no way limited to the forms of embodiment described by way of example and represented in the figures, however, such floor covering and the pertaining floor panels 1 can be embodied in various forms and dimensions without departing from the scope of the invention.

For example, the various characteristics which are described by means of the represented embodiments or examples may be selectively combined with each other.

Furthermore, all embodiments of coupling elements described before can be applied at the longer side as well as at the shorter side of a panel.

What is claimed is:

1. A floor covering comprising a hard floor panel having a substantially planar underside and at least two opposed side edges, said side edges including complementary coupling parts configured to cooperate with identical cooperative complementary coupling parts of another one of said panel, said coupling parts comprising substantially a tongue and a groove extending along panel side edges generally parallel to the panel underside and including integrated

14

mechanical locking elements, said tongue, groove and locking elements formed in one piece with the panel, said tongue, groove and locking elements arranged to prevent drifting apart of the floor panel when coupled by said coupling parts to another one of said floor panel in a direction perpendicular to the adjacent side edges of the coupled panels, and parallel to the underside of the panel; a coupling part of said panel, when engaged with a complementary coupling part of another one of said panel, configured and arranged to produce a biasing force between such coupled panels tending to urge the panels towards each other; at least one of said coupling parts including an elastically bendable portion having a relaxed unbent position, and which, when in a coupled condition, is at least partially bent out of its normal relaxed position and thereby provides said biasing force;

wherein the elastically bendable portion of said one of said coupling part comprises a lower lip defined at least in part by a lower side of the groove of said coupling parts, said lower lip cooperating with a mating portion of a tongue of a cooperating coupling part;

wherein said lip when bent extends in a downward direction relative to the panel underside when the panel is coupled by cooperative complementary coupling parts to another one of said panel;

wherein the panel comprises a core comprising a material selected from the group consisting of HDF and MDF board; said lower lip is substantially formed of said core; one of said locking elements comprises a recess in said lower lip, said recess having a lowermost bottom area; said groove having a deepest point within the panel; and wherein said elastically bendable portion of the lower lip comprises a portion of said lower lip located between the deepest point of said groove and the lowermost bottom area of said recess;

wherein the bendable portion of the lower lip includes a side wall of said recess that slopes downwardly in a direction extending from a distally outer area of said lip towards a proximally inner area of said lip.

2. A floor covering comprising a hard floor panel having a substantially planar underside and at least two opposed side edges, said side edges including complementary coupling parts configured to cooperate with identical cooperative complementary coupling parts of another one of said panel, said coupling parts comprising substantially a tongue and a groove extending along panel side edges generally parallel to the panel underside and including integrated mechanical locking elements, said tongue, groove and locking elements formed in one piece with the panel, said tongue, groove and locking elements arranged to prevent drifting apart of the floor panel when coupled by said coupling parts to another one of said floor panel in a direction perpendicular to the adjacent side edges of the coupled panels, and parallel to the underside of the panel; a coupling part of said panel, when engaged with a complementary coupling part of another one of said panel, configured and arranged to produce a biasing force between such coupled panels tending to urge the panels towards each other; at least one of said coupling parts including an elastically bendable portion having a relaxed unbent position, and which, when in a coupled condition, is at least partially bent out of its normal relaxed position and thereby provides said biasing force;

wherein said hard floor panel is rectangular and includes two pairs of opposed side edges; said coupling parts and locking elements are provided on all side edges of the

US 6,490,836 B1

15

panel; and wherein said locking elements are provided on at least two side edges that are perpendicular to and meet each other whereby, when the panel is coupled with complementary coupling parts of identical ones of said panel at all opposed edges, the panels are locked together by said locking elements at all coupled side edges;

wherein said coupling parts are configured and arranged to enable coupling of complementary coupling parts of identical ones of said panel to each other by rotation of one panel relative to the other, said coupling parts configured such that upon rotation of one panel relative to the other panel the elastically bendable portion of one coupling part is bent; and wherein at coupled side edges of the coupled panels the coupling parts are configured such that one panel is movable relative to the other by shifting the one relative to the other in a direction parallel to the coupled side edges; said shifting of one panel relative to the other maintaining the bent condition of the elastically bendable portion of the lower lip while the panels are coupled.

3. A method of assembling a floor covering comprising cooperating rectangular hard floor panels each having a substantially planar underside and at least two opposed side edges including complementary coupling parts arranged to cooperate with identical complementary coupling parts of another one of said panels, said complementary coupling parts substantially comprising a tongue and a groove extending generally parallel to said underside, said coupling parts further including integrated mechanical locking elements which prevent the drifting apart of coupled ones of said panels away from each other in directions perpendicular to the respective coupled side edges and parallel to the undersides of the panels, said coupling parts defining at least in part a lower lip which defines at least a portion of a lower side of each groove of the coupling parts and an upper lip located above each groove area adjacent the upper surface of the panel; said lower lip extending distally beyond the upper lip; said locking elements including a portion of said lower lip which slopes downwardly in a direction extending from a distally outer location towards a proximally inner location, said portion located at least in part on a part of the lower lip extending beyond said upper lip, a lower side of said tongue that is inclined downwardly in a direction extending from proximal inner location of said tongue to a distally outer location thereof; said portion of said lower lip that slopes downwardly cooperating with said lower side of the tongue that is inclined, said lower lip including an elastically bendable portion that must be elastically bent downwardly to enable coupling of a complementary pair of tongue and groove coupling parts; comprising the steps of:

laying a first one of said panels on a support surface;

coupling a second one of said panels to said first one panel along first and second complementary side edges of the panels by fitting a tongue of one panel into a complementary groove of the other panel until said downwardly sloping portion of said lower lip engages said downwardly inclined lower side of said tongue while bending the lower lip elastically in a downward direction; and

maintaining said lower lip in a bent condition after such coupling to effectively bias the sloped and inclined portions of the lower lip and tongue together and to produce a resultant biasing force maintaining the panels compressed against each other at the coupled side edges.

4. A method according to claim 3, wherein said second panel is coupled to the first panel by first fitting the tongue

16

and groove into each other with the second panel angled upwardly with respect to the first panel and then subsequently angling down the second panel to bring the two panels into a coplanar relationship, and causing by said angling down that the bendable portion of the lower lip of the first panel is resiliently bent downwardly over a small distance.

5. The method according to claim 3, wherein the second panel is coupled to the first panel by first fitting the tongue and groove into each other, said fitting being carried out by shifting the second panel relative to the first panel with both panels in a substantially coplanar relationship, and causing by said shifting that the bendable portion of the lower lip of the first panel is deflected downwardly over a small distance.

6. The method according to claim 3, wherein said tongue, groove, lips and locking elements are provided on coupling parts located at opposed pairs of opposite side edges, said method comprising the additional step of:

coupling a third one of said panels to the first and second ones of said panels respectively along complementary third and fourth side edges of the panels that extend perpendicular to each other; and causing by said coupling that an elastically bendable portion of a lower lip of the last recited side edges is elastically deflected in a downward direction, the return force of the deflected portion of the lip providing the resultant biasing force maintaining the panels compressed against each other along said third and fourth side edges.

7. The method according to claim 6, wherein the coupling of the panels is created by the steps of:

coupling the third panel to the first panel by first fitting a tongue of the third panel into a complementary groove of the first panel with the third panel angled upwardly with respect to the first panel, then angling down the third panel so that the lower lip of the first panel are coplanar, and causing by said angling down that the bendable portion of the lower lip of the first panel is deflected downwardly over a small distance to provide a resilient biasing force urging said first and third panels together;

coupling the third panel to the second panel by first partially fitting a tongue of the third panel into a complementary groove of the second panel and then shifting the third panel toward the second panel with the second and third panels in a coplanar relationship to fully couple the respective tongue and groove of the third and second panels; said third and second panels being thereby located in a coplanar condition with the bendable portion of the lower lip of the second panel remaining in a downwardly deflected condition to provide a resilient biasing force urging the third and second panels together.

8. The method according to claim 6, wherein the coupling of the panels is created by the steps of:

coupling the third panel to the first panel by first fully coupling together a tongue and groove of the third and first panels by shifting the third panel relative to first panel with both panels in a coplanar relationship, said shifting causing a bendable portion of the lower lip of the first panel to become and remain deflected downwardly over a small distance while the panels are coupled; and

coupling the third panel to the second panel by coupling the tongue and groove of the respective third and second panels, said coupling being carried out by shifting the third panel relative to the second panel with the panels in a substantially coplanar relationship;

17

causing the bendable portion of the lower lip of the second panel to become and remain deflected downwardly over a small distance while the third and second panels are coupled.

9. The method according to claim 3, including the step of laying all the panels over a flexible underlay, said flexible underlay accommodating the downwardly bent portions of the panel lips with the upper surfaces of the panels lying in a common plane.

10. A floor covering comprising

a laminated hard floor panel having a wood-based core material selected from the group consisting of High Density Fibreboard (HDF) and Medium Density Fibreboard (MDF), said panel comprising a first pair and a second pair of opposed side edges,

said panel further comprising generally complementary coupling parts located at both of the pairs of said side edges, said coupling parts comprising a tongue and a groove, said tongue and groove when coupled along adjacent side edges of two ones of said panel comprising integral mechanical locking elements, said coupling parts as well as said mechanical locking elements being integral and made in one piece with said core material,

said coupling parts together with said locking elements arranged so as to enable a locking in a direction perpendicular to the plane of the floor covering as well as in a direction perpendicular to the coupled side edges and parallel to a plane including the panels that are coupled,

wherein said coupling parts and the mechanical locking elements of at least said second pair of opposite side edges are configured such that two identical ones of said floor panel are coupled by shifting them laterally towards each other in a substantial planar fashion, and

wherein the locking elements of said second pair of opposite side edges provide a snap-together coupling providing a snap-action during the coupling of two panels by shifting them laterally towards each other, said snap action being delivered substantially by said core material;

wherein said locking elements comprise a recess located in a lower lip extending at least to a side edge and defining at least in part a lower side of said groove; and a protrusion provided at a lower side of said tongue;

wherein the panels at the side edge comprising the groove, of at least one of the side edge of both pairs of the side edges, include an upper lip above the groove, said upper lip defining at least in part an upper side of said groove, and said upper lip terminating at a distal outer end, wherein said lower lip extends distally beyond the distal outer end of the upper lip, and further wherein the recess is located in the lower lip in an area of the lower lip that is located at least partly beyond the distal outer end of the upper lip.

11. The floor covering according to claim 10, wherein the configuration of the tongue and the lower lip are such that a tongue of said panel becomes automatically lodged in the groove of another identical one of said panels by laterally moving the panels towards each other in approximately a plane including the panels during which the tongue is partially inserted into the groove before the lower lip is deformed.

12. The floor covering according to claim 11, wherein said panel becomes automatically lodged in the groove of another identical one of said panels by laterally moving the panels towards each other in approximately a plane including the panels starting from positions at which the panels are completely separated from each other.

13. The floor covering according to claim 10, wherein the first pair of side edges as well as the second pair of the side edges comprise coupling parts and locking elements including a lower lip extending beyond the upper lip.

14. The floor covering according to claim 10, wherein one pair of the side edges comprises coupling parts in the form of a tongue and a groove and wherein the locking elements of this pair of side edges are located completely inside the groove.

15. The floor covering according to claim 14, wherein the groove is formed by upper and lower lips, the upper lip and the lower lip bordering the groove are of equal length.

16. The floor covering according to claim 15, wherein said floor panels are elongated and the side edges having the upper lip and the lower lip of equal length is located at one of the short sides of the panels.

17. The floor covering according to claim 10, wherein the lower lip extends beyond the upper lip over a distance which is smaller than the thickness of the panel.

18. The floor covering according to claim 10, wherein at least one pair of the edges, the locking elements comprise inclined contact surfaces.

19. The floor covering according to claim 18, wherein the contact surfaces define a tangent line which in respect to the plane of the floor covering shows an inclination which is comprised between 30° and 70°.

20. The floor covering according to claim 11, wherein the locking elements comprise at least one contact surface which is perpendicular to the plane of the panels.

21. The floor covering according to claim 14, wherein one pair of the side edges comprises coupling parts in the form of a tongue and a groove and wherein the locking elements of this pair of side edges are located completely inside the groove; and wherein the locking elements comprise at least one contact surface which is perpendicular to the plane of the panels.

22. The floor covering according to claim 10, wherein said lower lip comprises an increasing thickness from the recess towards the innermost point of said groove.

23. A floor covering comprising

a laminated hard floor panel having a wood-based core material selected from the group consisting of High Density Fibreboard (HDF) and Medium Density Fibreboard (MDF), said panel comprising a first pair and a second pair of opposed side edges,

said panel further comprising generally complementary coupling parts located at both of the pairs of said side edges, said coupling parts comprising a tongue and a groove, said tongue and groove when coupled along adjacent side edges of two ones of said panel comprising integral mechanical locking elements, said coupling parts as well as said mechanical locking elements being integral and made in one piece with said core material,

said coupling parts together with said locking elements arranged so as to enable a locking in a direction perpendicular to the plane of the floor covering as well as in a direction perpendicular to the coupled side edges and parallel to a plane including the panels that are coupled,

wherein said coupling parts and the mechanical locking elements of at least said second pair of opposite side edges are configured such that two identical ones of said floor panel are coupled by shifting them laterally towards each other in a substantial planar fashion, and

wherein the locking elements of said second pair of opposite side edges provide a snap-together coupling

US 6,490,836 B1

19

providing a snap-action during the coupling of two panels by shifting them laterally towards each other, said snap action being delivered substantially by said core material;

at least one of said pairs of edges comprising a lower lip defining at least in part a bottom side of a groove of said coupling parts and extending distally beyond a respective groove opening, and wherein said locking elements comprise a protrusion extending from the lower side of a tongue of said pairs of edges and a cooperating recess in said lower lip, said protrusion and recess fitting together when ones of said panel are coupled by said tongue and groove;

wherein, when a complementary tongue and groove are coupled, said protrusion and recess meet each other at contiguous contact surfaces at a common plane of tangency that with respect to a common plane of the coupled panels is inclined inwardly from a distally outer area towards a distally inner area at an angle less than 90°.

24. The floor panel according to claim 23, wherein the angle is between 30–70°.

25. A floor covering comprising

a laminated hard floor panel having a wood-based core material selected from the group consisting of High Density Fibreboard (HDF) and Medium Density Fibreboard (MDF), said panel comprising a first pair and a second pair of opposed side edges,

said panel further comprising generally complementary coupling parts located at both of the pairs of said side edges, said coupling parts comprising a tongue and a groove, said tongue and groove when coupled along adjacent side edges of two ones of said panel comprising integral mechanical locking elements, said coupling parts as well as said mechanical locking elements being integral and made in one piece with said core material,

said coupling parts together with said locking elements arranged so as to enable a locking in a direction perpendicular to the plane of the floor covering as well as in a direction perpendicular to the coupled side edges and parallel to a plane including the panels that are coupled,

wherein said coupling parts and the mechanical locking elements of at least said second pair of opposite side edges are configured such that two identical ones of said floor panel are coupled by shifting them laterally towards each other in a substantial planar fashion, and

wherein the locking elements of said second pair of opposite side edges provide a snap-together coupling providing a snap-action during the coupling of two panels by shifting them laterally towards each other, said snap action being delivered substantially by said core material;

at least one of said pairs of edges comprising a lower lip defining at least in part a bottom side of a groove of said coupling parts and extending distally beyond a respective groove opening, and wherein said locking elements comprise a protrusion extending from the lower side of a tongue of said pairs of edges and a cooperating recess in said lower lip, said protrusion and recess fitting together when ones of said panel are coupled by said tongue and groove;

said panel including an upper outer edge and wherein the protrusion and recess include engageable complementary contact surfaces located on radii (R1–R2) centered within a circle which extends within a radius of 3 mm around the upper outer edge of the panel.

20

26. A method of assembling a floor covering comprising hard floor panels of rectangular shape, said panels each including complementary coupling parts at opposed side edges of the panels, said coupling parts arranged to cooperate with complementary coupling parts of another one of said panel, said coupling parts comprising substantially a tongue, a groove, and integrated locking elements collectively arranged to prevent the drifting apart of two coupled ones of said floor panel in a direction parallel to the edges along which the panels are coupled and parallel to a plane including the floor panels, said panels each including distally extending upper and lower lips on opposite sides of said groove, said lower lip including an elastically flexible portion and defining at least in part a lower side of the groove and extending distally beyond the upper lip, and wherein one of said locking elements comprises at least in part a portion of the elastically flexible portion of the lower lip that extends beyond the upper lip and which is inclined downwardly in a direction extending inwardly from the distal end area of said lip, said locking element cooperating with a surface of the lower side of the tongue which slopes downwardly in a direction extending outwardly from a proximal area of the tongue toward a distal area thereof, said method comprising the steps of:

laying a first one of said hard floor panel on a support surface;

placing a second one of said panel next to a side edge of the first one of said panel, such that a tongue of one of said panel side edges lies next to a groove of the other one of said panel side edges;

shifting the panels towards each other to move a tongue into a groove and to bend a flexible portion of a lower lip downwardly, said shifting causing the inclined and sloped surfaces of the tongue and groove respectively to engage each other in coupled relationship with the panels biased towards each other by the returning force of the downwardly bent lower lip;

wherein a third panel is coupled to a previously laid one or more of said first and second ones of said panel by placing the tongue of the third panel in a complementary groove of one or more of the previously laid panels, and wherein the second one of said panel, before being coupled with the first one of said panel, is coupled to an already previously laid one or more of said panel using the steps of:

directing a tongue of the third one of said panel towards a groove of an already laid panel or panels and inserting a tongue of the third one of said panel at least partially into the groove of an already laid panel or panels while the third one panel is angled upwardly relative to the already laid panel or panels;

angling down the third one of said panel so that the inclined locking elements are brought adjacent each other;

after such angling down of the third one of said panel, laterally moving the third one of said panel towards the previously laid one or more panels with the panels in a common plane to completely engage the tongue, groove and locking elements of the third one of said panel with a complementary tongue, groove and locking element of the previously laid panel or panels.

27. A floor covering comprising

a laminated hard floor panel having a wood-based core material selected from the group consisting of High Density Fibreboard (HDF) and Medium Density Fibre-

21

board (MDF), said panel comprising a first pair and a second pair of opposed side edges,

said panel further comprising generally complementary coupling parts located at both of the pairs of said side edges, said coupling parts comprising a tongue and a groove, said tongue and groove when coupled along adjacent side edges of two ones of said panel comprising integral mechanical locking elements, said coupling parts as well as said mechanical locking elements being integral and made in one piece with said core material,

said coupling parts together with said locking elements arranged so as to enable a locking in a direction perpendicular to the plane of the floor covering as well as in a direction perpendicular to the coupled side edges and parallel to a plane including the panels that are coupled,

wherein said coupling parts and the mechanical locking elements of at least said second pair of opposite side edges are configured such that two identical ones of said floor panel are coupled by shifting them laterally towards each other in a substantial planar fashion, and

wherein the locking elements of said second pair of opposite side edges provide a snap-together coupling providing a snap-action during the coupling of two panels by shifting them laterally towards each other,

22

said snap action being delivered substantially by said core material;

wherein said coupling parts and locking elements of the first pair of side edges are configured and dimensioned so as to enable two identical ones of said floor panel to be coupled at the side edges at least by turning one of said floor panels relative to the other.

28. The floor covering according to claim 27, wherein said coupling parts and locking elements of the first pair of side edges are configured and dimensioned so as to enable identical ones of said floor panel to be laterally coupled at these side edges exclusively by turning one of said floor panels relative to the other.

29. The floor covering according to claim 27, wherein said floor panels are elongated and the first pair of opposed side edges is formed by the longer side edges, whereas the second pair of opposed side edges is formed by the shorter side edges.

30. The floor covering according to claim 27, wherein said coupling parts and said locking elements of both of the pairs of side edges are configured and dimensioned so as to enable identical ones of said floor panel to be laterally engaged, as well as disengaged, at their side edges by turning one of said floor panel relative to the other.

*    *    *    *    *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,490,836 B1                                Page 1 of 7
DATED         : December 10, 2002
INVENTOR(S)   : Moriau et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

The title page showing the illustrative figure should be deleted, and substituted therefore
the new title page with the illustrated figure attached.

Drawings,
The drawing sheets 1-4 & 9, consisting of figures 3, 5, 8, 11, 22 & 23, should be deleted
to be replaced with the drawing sheets 1-4 & 9, consisting of figures 3, 5, 8, 11, 22 &
23, as shown on the attached sheets.

Signed and Sealed this

Twenty-fourth Day of June, 2003

JAMES E. ROGAN
*Director of the United States Patent and Trademark Office*

(12) **United States Patent**
Moriau et al.

(10) Patent No.: **US 6,490,836 B1**
(45) Date of Patent: *Dec. 10, 2002

---

(54) **FLOOR PANEL WITH EDGE CONNECTORS**

(75) Inventors: **Stefan Simon Gustaaf Moriau**, Ghent (BE); **Mark Gaston Maurits Cappelle**, Staden (BE); **Bernard Paul Joseph Thiers**, Oostrozebeke (BE)

(73) Assignee: **Unilin Beheer B.V. Besloten Vennootschap**, Nieuwerkerk A/D Ijssel (NL)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/471,014**

(22) Filed: **Dec. 23, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 08/872,044, filed on Jun. 10, 1997, now Pat. No. 6,006,486.

(30)    **Foreign Application Priority Data**

Jun. 11, 1996    (BE) ............................................. 09600527
Apr. 15, 1997    (BE) ............................................. 09700344

(51) Int. Cl.[7] ............................................. E04B 2/08
(52) U.S. Cl. ................. **52/589.1**; 52/592.1; 52/586.1; 52/590.2; 52/592.3
(58) Field of Search ........................... 52/578.1, 589.1, 52/592.1, 590.2, 592.7, 586.1, 570, 572, 591.1, 590.1

(56)    **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 753,791 A | 3/1904 | Fulghum | |
| 1,124,228 A | 1/1915 | Houston | |
| 1,985,739 A | 1/1935 | Mitte | |
| 1,988,201 A | 1/1935 | Hall | |
| 2,276,071 A | 3/1942 | Scull | |

| | | | |
|---|---|---|---|
| 2,430,200 A | 11/1947 | Wilson |
| 2,740,167 A | 4/1956 | Rowley |
| 3,045,294 A | 7/1962 | Livezey, Jr. |
| 3,267,630 A | 8/1966 | Omholt |
| 3,310,919 A | 3/1967 | Bue et al. |
| 3,387,422 A | 6/1968 | Wanzer |
| 3,526,470 A | 9/1970 | Brancaleone |
| 3,538,665 A | 11/1970 | Gall |
| 3,654,983 A | 10/1972 | Couquet |
| 3,731,445 A | 5/1973 | Hoffmann et al. |
| 3,759,007 A | 9/1973 | Thiele |
| 3,859,000 A | 1/1975 | Webster |
| 4,164,832 A | 8/1979 | Van Zandt |
| 4,169,688 A | 10/1979 | Toshio |

*(List continued on next page.)*

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | A 13098/83 | 10/1983 |
| BE | 417526 | 9/1936 |

*(List continued on next page.)*

OTHER PUBLICATIONS

Observations of M. Kandl submitted in European patent application No. 00201515.4 of Unilin Beheer, Oct. 18, 2001.

*(List continued on next page.)*

*Primary Examiner*—Yvonne M. Horton
(74) *Attorney, Agent, or Firm*—Bacon & Thomas

(57)    **ABSTRACT**

Floor covering, including hard floor panels (1) which, at least at the edges of two opposite sides (2–3, 26–27), are provided with coupling parts (4–5, 28–29), cooperating which each other, substantially in the form of a tongue (9–31) and a groove (10–32), wherein the coupling parts (4–5, 28–29) are provided with integrated mechanical locking elements (6) which prevent the drifting apart of two coupled floor panels in a direction (R) perpendicular to the related edges (2–3, 26–27) and parallel to the underside (7) of the coupled floor panels (1).

**30 Claims, 10 Drawing Sheets**



**U.S. Patent**      Dec. 10, 2002      Sheet 1 of 10      **6,490,836 B1**



*Fig.1*



*Fig.8*

**U.S. Patent**      Dec. 10, 2002      Sheet 2 of 10      **6,490,836 B1**



Fig.2

Fig.3

Fig.4

**U.S. Patent**     Dec. 10, 2002     Sheet 3 of 10     **6,490,836 B1**



**U.S. Patent**          Dec. 10, 2002          Sheet 4 of 10          **6,490,836 B1**



Fig.9

Fig.10

Fig.11



*Fig.22*

*Fig.23*